BLOUNT v. SOCIETE ANONYME DU FILTRE CHAMBERLAND SYSTEME PASTEUR et al.

(Circuit Court of Appeals. Sixth Circuit. November 1, 1892.)

No. 57.

1. PATENTS FOR INVENTIONS—APPEAL FROM ORDER FOR PRELIMINARY INJUNCTION—REVIEW.

On an appeal to the circuit court of appeals under section 7 of the act of March 3, 1891, from an order granting an injunction pendente lite against the infringement of a patent, the only question for review is whether the injunction was erroneously or improvidently granted in the legal discretion of the trial court, and the questions of the validity of the patent and infringement can be considered only incidentally, as bearing upon this matter.

2. SAME—PRELIMINARY INJUNCTION—PRESUMPTION OF VALIDITY OF PATENT.

On an application for a preliminary injunction to restrain infringement of letters patent No. 336,385, granted February 16, 1886, to Charles E. Chamberland for certain new and useful improvements in filtering compounds, it appeared that complainant had an undoubted title to the patent as assignee and licensee; that it made and sold the article for several years without any attempt by others to make or sell the same; that the invention had been used from the date of the patent until 1892, only under license of the patentee; and that an interlocutory injunction had been granted in another circuit in a suit between the same parties. Held, that these circumstances created so strong a presumption of the validity of the patent as to authorize the issuance of a preliminary injunction, in the absence of clear proof of invalidity.

**8. SAME—ESTOPPEL—EQUITIES.**

    In a suit by a corporation for infringement of a patent, it appeared that defendant had actively engaged in procuring a license to manufacture and sell the patented article, and in promoting and organizing the corporation to carry on the business thereunder, and that he had held a financial interest in the corporation, and had been an officer thereof. *Held* that, if this relation to the patent did not entirely estop defendant from questioning its validity, it at least gave rise to a strong equity in favor of complainant.

**4. SAME—RESTRICTION OF PATENT—FILTERING COMPOUND.**

    Letters patent No. 336,385, issued February 16, 1886, to Charles E. Chamberland, cover a filtering compound made, as stated in the specifications, of "pipe clay, or other suitable clay, and porcelain earth ground to a fine powder, or its equivalents, hereinafter named." The patentee subsequently states that he does not limit himself to the above-named substances, "for the same result may be attained by using, for instance, silex, magnesia, or its equivalent, instead of porcelain earth.' *Held*, on appeal from an order granting a preliminary injunction, that, unless the patent was to be strictly construed, it would seem to cover the substitution of fine sand for the porcelain earth, and that there was apparently nothing in the state of the art, or the value of the invention, to require such a strict construction.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

In Equity. Bill by the Societe Anonyme du Filtre Chamberland Systeme Pasteur and the Pasteur Chamberland Filter Company against Ambrose A. Blount and Frank K. Way for infringement of a patent. An order granting a preliminary injunction was entered in the circuit court, partly on the authority of a like injunction granted in the seventh circuit in a suit between the same parties. See Pasteur-Chamberland Filter Company v. Funk, 52 Fed. Rep. 146. Defendant Blount appealed therefrom, under section 7 of the judiciary act of March 3, 1891. Subsequent to the appeal a motion to set aside the supersedeas was denied by the circuit court. 51 Fed. Rep. 610. Order for preliminary injunction sustained, appeal dismissed, and cause remanded, with direction to reinstate the injunction, which had been improperly superseded.

H. A. Toulmin, for appellant.

Kerr & Curtis and Staley & Shepherd, (L. Hill, of counsel,) for appellees.

Before JACKSON and TAFT, Circuit Judges.

JACKSON, Circuit Judge. This is an appeal, under the seventh section of the act of March 3, 1891, from an order of the circuit court granting a preliminary or provisional injunction against the appellant. On June 6, 1892, the appellees, as assignee and licensee of letters patent No. 336,385, granted February 16, 1886, to Charles E. Chamberland for certain new and useful improvements in filtering compounds, instituted suit against the appellant and one Frank K. Way, as infringers of said patent. The bill, in the usual form, set forth that said Chamberland was the true, original, and first inventor of said filtering compound; that letters patent of the United States were duly issued to him therefor; that by instruments in writing, duly executed and recorded, said Chamberland had thereafter assigned and conveyed to complainant the Societe Anonyme du Filtre Systeme Pasteur, a French corporation, the entire right, title, and interest in, to, and under said letters patent; that said assignee had

thereafter transferred to the complainant the Pasteur-Chamberland Filter Company, a corporation created and existing under the laws of the state of Ohio, the exclusive right to sell and use the said patented invention in the United States, subject to certain conditions and provisions named in the instrument conveying the right; that said licensee had spent large sums of money and used much effort in introducing said invention, and bringing it into practical and public use; that it had been in the undisturbed possession and enjoyment of the valuable and exclusive privileges secured by said letters patent, and of the profits arising therefrom, until the defendants commenced the infringement thereof; that said defendants, prior to the infringement complained of, were stockholders and officers in the complainant corporation the Pasteur-Chamberland Filter Company, the defendant Blount having been its president and a member of its board of directors, and defendant Way its superintendent. It is further alleged, in substance, that said Blount, prior to his connection with said Pasteur-Chamberland Filter Company, was a large stockholder in and an officer of a corporation in Ohio known as the Western Pasteur Filter Company, which owned and controlled the exclusive right to make and use filters under said letters patent throughout a large territory of the United States; that said Western Pasteur Filter Company, through the efforts and representations of said Ambrose A. Blount, disposed of its rights under said patent to the complainant corporation the Pasteur-Chamberland Filter Company, and that said Blount received a large portion of the consideration paid by the latter for such transfer, etc.; that said defendants, after disposing of their stock and interest in said Pasteur-Chamberland Filter Company, commenced the infringement of said letters patent in the southern district of Ohio, in connection with one C. E. Funk, using the knowledge and experience of the trade, business methods, and manufacture obtained by them while in the employ of said Pasteur-Chamberland Filter Company, as its confidential and trusted officers and employes, for the purpose of fraudulently obtaining the benefits of the efforts of complainants in introducing said invention to the public, and of the market established for the same, etc. The bill prayed for an injunction and the ordinary account in such cases. The motion for preliminary injunction was heard upon bill and affidavits and exhibits thereto, introduced on both sides, and was granted in the usual form, restraining defendants, and each of them, their agents and representatives, from the further or any use of the filtering compound, or a like or similar compound, as set forth in said letters patent No. 336,385, the same to continue in force until decree on final hearing or further order of the court. After the order awarding the preliminary injunction was passed, and the writ was issued, the defendant Blount filed his answer to the bill; but, without moving for a dissolution of the injunction, he thereafter prayed for and obtained an appeal to this court from the order granting the same.

The single question presented for our determination on said appeal is whether the order of the lower court awarding the injunction was erroneous or improvident, under the facts and circumstances of the

case, as disclosed by the motion papers on which its action was based. It is provided by section 4921, Rev. St., that—

"The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions, according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable."

The object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined upon strictly legal proofs, and according to the course and principles of courts of equity. The prerequisites to the allowance and issuance of such injunction are that the party applying for the same must generally present a clear title, or one free from reasonable doubt, and set forth acts done or threatened by the defendant, which will seriously or irreparably injure his rights under such title, unless restrained. The legal discretion of the judge or court in acting upon applications for provisional injunctions is largely controlled by the consideration that the injury to the moving party, arising from a refusal of the writ, is certain and great, while the damage to the party complained of, by the issuance of the injunction, is slight or inconsiderable. In Great Western R. Co. v. Birmingham & O. J. Ry. Co., 2 Phil. Ch. 602, it was said by Lord Cottenham:

"It is certain that the court will in many cases interfere and preserve property in statu quo during the pendency of a suit in which the rights to it are to be decided, and that without expressing, and often without having the means of forming, any opinion as to such rights. It is true that the court will not so interfere if it thinks that there is no real question between the parties; but, seeing that there is a substantial question to be decided, it will preserve the property until such question can be regularly disposed of. In order to support an injunction for such purpose, it is not necessary for the court to decide upon the merits in favor of the plaintiff."

In Glascott v. Lang, 3 Mylne & C. 455, it is said by the same learned judge that—

"In looking through the pleadings and evidence for the purpose of an injunction, it is not necessary that the court should find a case which would entitle the plaintiffs to relief at all events. It is quite sufficient if the court finds, upon the pleadings and upon the evidence, a case which makes the transaction a proper subject of investigation in a court of equity."

In Shrewsbury v. Railway Co., 1 Sim. (N. S.) 410–426, after reviewing the above rulings of Lord Cottenham, the vice chancellor thus states the rule in reference to preliminary injunctions:

. "That there are two points on which the court must satisfy itself. First, it must satisfy itself, not that the plaintiff has certainly a right, but that he has a fair question to raise as to the existence of such a right. The other is whether 'interim' interference, on a balance of convenience or inconvenience to the one party and to the other, is or is not expedient."

In Georgia v. Braiseford, 2 Dall. 402, it is said:

"In order to support a motion for an injunction, the bill should set forth a case of probable right, and a probable danger that the right would be defeated without the special interposition of the court."

The same general principles announced in these authorities govern and control the legal discretion of the judge or court in granting pre-

liminary injunctions in suits for the infringement of patents. In such suits the plaintiff's application for a provisional or pendente lite injunction should present a title to the patent sued on, the probable validity of such patent, and infringement thereof by the defendant. It is not questioned that the complainants, together, are vested with all the right, title, and interest in and to the letters patent in suit, which were possessed by the patentee, Charles E. Chamberland. Their title is fully established, if not conceded; and if, in addition to such title, it fairly appears or is to be presumed that the patent is valid, or that appellant was not in a position to deny its validity, and that he has actually infringed or threatened to infringe the same, a prima facie case for a preliminary injunction is made out. This court, under the present appeal, is not called upon to make any final decision as to the validity of the patent or the infringement thereof, nor is the consideration of those questions either necessary or proper, further than to ascertain whether the order complained of was an improvident exercise of a legal discretion on the part of the circuit court. We have held at the present term that on an appeal under the seventh section of the act of March, 1891, from an interlocutory order granting an injunction, this court, even with the consent of parties, could not properly pronounce any final judgment or decree on the merits of the controversy in respect to the validity of the patent involved, and its infringement, inasmuch as these questions remained in the lower court for final adjudication, in the exercise of its original jurisdiction. See opinion in Watch Co. v. Robbins, 52 Fed. Rep. 337.

But while this court, on appeals like the present, may not properly pass upon the merits of the controversies involved in the litigation, it may incidentally consider the questions relating to the validity and infringement of the patent, as well as all other facts bearing upon the propriety of sustaining or dissolving the injunction awarded.

Now, what are the fair and reasonable probabilities as to the validity of the Chamberland patent in question, as disclosed in the case before us? There is the general "prima facie" presumption of the novelty and utility of the invention, and that the patentee is the first and true inventor, which arises from the letters patent granted by the government. Railroad Co. v. Stimpson, 14 Pet. 448; Seymour v. Osborne, 11 Wall. 516; Smith v. Dental Co., 93 U. S. 486; and Lehnbeuter v. Holthaus, 105 U. S. 94.

There is the further special presumption of its validity arising from public acquiescence.

It is well settled that, for the purpose of laying the foundation for a preliminary injunction, it may be shown that the patentee, or those succeeding to his rights, have made, used, and sold the patented article or device for years, during which no other person or persons have assumed to make or sell the same. Where all persons, other than the owner of the patent, have for several years refrained from making, using, or selling the patented article, for the reason that it is patented, when it would be for their interest to adopt it, such acquiescence raises a fair presumption of its validity, sufficient to warrant the issuance of a preliminary injunction to restrain its in-

fringement. So, too, if the patentee has long licensed the use of his invention, which no one has, for periods varying from two to eight years, assumed to use or sell without such license, there is such acquiescence as lays the foundation for a preliminary injunction. Sargent v. Seagrave, 2 Curt. 557; Doughty v. West, 2 Fish. Pat. Cas. 559; and Machine Co. v. Williams, Id. 138.

It distinctly appears in the present case that the Chamberland patent has since its issuance, in February, 1886, down to 1892, only been used under license or right granted by the patentee, and that during said period there has been a general public acquiescence in its validity. The complainants, as the successors in title, have expended large sums in preparing for and carrying on the manufacture of the patented article, and in introducing the filtering compound into practical use. They have for many years had this exclusive use, without question on the part of the public, of a patented device of great utility and value. Under such circumstances there arises such presumption of the validity of the patent as to entitle them to a preliminary injunction to restrain its infringement, unless the party sought to be restrained can clearly show its invalidity. This the appellant has attempted to do by reference to several prior patents for filters and filtering compounds. We do not deem it necessary to review those prior patents in detail. We have carefully examined them, and fail to find that they or either of them accomplish the purpose of the Chamberland invention, or cover the filtering compound which forms the subject of his patent. Again, it is shown that in a suit by complainants against appellant in the seventh circuit, for alleged infringement of this Chamberland patent, the circuit court has awarded a preliminary injunction based upon the validity of the patent, and its infringement. This interlocutory decree in another suit between the same parties, if not conclusive of the complainants' right to a provisional or pendente lite injunction in the present case, is strongly presumptive of the propriety of awarding such injunction, as it involved to a certain extent a judicial determination that the patent was prima facie valid. An interlocutory decree granting an injunction in another case is a good foundation on which to base an application for a preliminary injunction in any other court. Potter v. Fuller, 2 Fish. Pat. Cas. 251.

But, aside from the foregoing considerations, it is shown that appellant was personally active in procuring a license to use this Chamberland patent in the United States; that he was a promoter of, and stockholder in, the Western Pasteur Filter Company, which accepted a license from the complainant the Societe Anonyme du Filtre Chamberland Systeme Pasteur, as owner of the patent, for the exclusive right to make, use, and sell filters embodying said invention throughout a large portion of the United States; that by and with his consent and active participation the rights so acquired by the Western Pasteur Filter Company were transferred and assigned, for a valuable consideration, to the complainant the Pasteur-Chamberland Filter Company; that the appellant received a portion of such consideration; that he became a stockholder in and president of said Pasteur-Chamberland Filter Company; that while connected

:with each of said companies, and personally interested in said patent, he, by circulars and otherwise, lauded and proclaimed the novelty and importance of the invention covered thereby, and was greatly instrumental in bringing to the attention of the public its value and utility, as well as the fact that said companies were the exclusive owners of the valuable right of making, using, and selling the same in the United States. It further appears that the sale and transfer of the rights held by the Western Pasteur Filter Company to the complainant the Pasteur-Chamberland Filter Company were duly authorized and directed by the stockholders of the former, including the appellant. Having thus recognized the validity of the patent by acquiring and accepting rights thereunder, by promoting and organizing and holding interests in corporations which held licenses to make, use, and sell the patented article, and by actively participating in selling and transferring such rights, it may well be doubted whether appellant is not estopped from denying or disputing, as against the Pasteur-Chamberland Filter Company, the validity of the patent. It appears that, after parting with his stock in the last-named company, he, in connection with others, commenced making and using the alleged infringing article in the spring and summer of 1892. His prior relation to the patent presented a strong equity in favor of the complainants, if it did not estop him from denying its validity under the authorities. See Faulks v. Kamp, 3 Fed. Rep. 898; Onderdonk v. Fanning, 4 Fed. Rep. 148--150; Purifier Co. v. Guilder, 9 Fed. Rep. 155; Telegraph Co. v. Himmer, 19 Fed. Rep. 322; Parker v. McKee, 24 Fed. Rep. 808; Alabastine Co. v. Payne, 27 Fed. Rep. 559; Steam Gauge & Lantern Co. v. Ham Manuf'g Co., 28 Fed. Rep. 618; Burr v. Kimbark, Id. 574.

But, aside from the question whether appellant is in a position to deny the validity of the patent, we are of the opinion that the presumptions in favor of its validity are not so clearly broken down as to warrant a dissolution of the injunction.

On the question of appellant's infringement there is conflicting evidence in the ex parte testimony of the experts, but the weight and preponderance of their statements supports the conclusion that the article manufactured by Dr. Blount does infringe the patented compound. If, as the appellant's counsel contends, the granular element of the patented compound is confined to baked porcelain earth, ground or reduced to fine powder, the question of infringement would be doubtful. But we are not prepared to hold that this is the proper construction to be placed upon the specification and claim of the patent. The patentee distinctly states in his specification that his compound is formed "substantially of pipe clay, or any other suitable clay, and porcelain earth, or its equivalents, hereinafter named." Then, after describing the method of treatment or preparation, he states that "I do not limit myself to the above-named substances, for the same, or very much the same, result may be attained by using, for instance, silex, magnesia, or its equivalent, instead of porcelain earth." Unless a very restricted construction is given to the claim of the patent it would seem that baked porcelain earth, ground or reduced to powder, is not the only granular element or ma-

terial covered by the patented compound. The state of the art, the value of the invention, and the language of the specification do not require such a limited and restricted construction.

It may fairly be contended that the fine sand used as the granular element of the appellant's filtering compound is the equivalent of the baked porcelain earth, ground or reduced to powder. Nor is there such wide difference in the proportions of pipe or other suitable clay and the granular material employed as to constitute any substantial difference in the filtering compound made by each of the parties.

The two filtering compounds are almost identical in appearance. To the naked eye there is no difference. The ex parte testimony and the fair construction of the patent raised a fair presumption of infringement, for the purpose of awarding a preliminary injunction. The appellant has no established business to be interrupted or injured, while the appellees are in a position to be seriously, if not irreparably, injured, if appellant is not restrained until the rights of the parties can be fully and finally adjudicated.

On the case presented we are of the opinion that appellees have exhibited such probable right, and probable danger to that right, as entitled them to the interposition of the injunctive powers of the lower court for its protection pendente lite, and further, that, upon the consideration of the balance of inconvenience or injury to one party or the other, the legal discretion of the circuit court in awarding the injunction was not improperly or improvidently exercised. Our conclusion upon the whole case, as now presented, is that the order appealed from is not erroneous, and that said appeal should be dismissed at appellant's cost.

The cause so far as brought to this court by the appeal will be remanded to the circuit court for the southern district of Ohio, western division, with the direction to reinstate its injunction, which appellant improperly superseded.