### DUPLEX PRINTING-PRESS CO. v. CAMPBELL PRINTING-PRESS & MANUF'G CO.

#### (Circuit Court of Appeals, Sixth Circuit. July 2, 1895.)

#### No. 298.

1. JURISDICTION OF CIRCUIT COURT OF APPEALS—APPEALS FROM PRELIMINARY INJUNCTIONS.

On appeal from an order granting a preliminary injunction, the circuit court of appeals cannot, by reason of any action of the circuit court, be enabled to finally determine the matters in controversy. Its power is limited to a consideration of the correctness of the order from the same standpoint as that occupied by the court below; and the order will not be disturbed unless the discretion of the circuit court was improvidently exercised. Blount v. Societe Anonyme, etc., 3 C. C. A. 455, 53 Fed. 98, 6 U. S. App. 335, followed.

2. SAME—ADJUDICATIONS IN OTHER CIRCUITS.

On an appeal from an order granting a preliminary injunction in a patent case, a prior adjudication by the circuit court of another circuit sustaining the patent and finding infringement is entitled to the same consideration as in the court below, and is sufficient ground for affirming the order. Blount v. Societe Anonyme, etc., 3 C. C. A. 455, 53 Fed. 98, 6 U. S. App. 335; American Paper Pail & Box Co. v. National Folding Box & Paper Co., 2 C. C. A. 165, 51 Fed. 229, 1 U. S. App. 283; Electric Manuf'g Co. v. Edison Electric Light Co., 10 C. C. A. 106, 61 Fed. 834,—followed.

3. PATENTS—PRINTING PRESSES.

The Kidder patent, No. 291,521, for a printing machine, and the Stonemetz patent, No. 376,053, for a web printing machine (being an improvement on the Kidder machine), construed, on appeal from an order granting a preliminary injunction, and held valid and infringed,—the former as to claims 1, 2, and 7, and the latter as to claim 12. Campbell Printing-Press & Manuf'g Co. v. Marden, 64 Fed. 782, followed.

4. SAME—PRELIMINARY INJUNCTION—BOND FOR DAMAGES.

Where complainant was not operating under the patent sued on, and an injunction would break up defendant's business, and it also appearing that defendant had already given chattel mortgages on its property, to secure creditors, held, that an injunction would be granted unless, within 10 days from the going down of the mandate, defendant should give bond with sureties conditioned for payment of all damages which might be awarded.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This was a bill by the Campbell Printing-Press & Manufacturing Company against the Duplex Printing-Press Company for infringe-

ment of two patents relating to printing presses. The circuit court granted a preliminary injunction restraining infringement of certain claims, and the defendant appeals.

Alexander & Dowell (Frederic H. Betts, of counsel), for appellant. Louis W. Southgate and George H. Lothrop, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge, delivered the opinion of the court.

This is an appeal by the defendant below from an order granting a preliminary injunction pending the hearing of a bill in equity to restrain the infringement of letters patent. The Campbell Printing-Press & Manufacturing Company owns letters patent No. 291,521, issued January 8, 1884, to Wellington P. Kidder for a printing machine, and No. 376,053, issued in January, 1888, to John H. Stonemetz, for a web printing machine. The averment of the bill was that the Duplex Printing-Press Company, the defendant, of Battle Creek, Mich., was manufacturing a printing press which infringed three of the claims of the Kidder patent and six of the claims of the Stonemetz patent. In an equity suit brought by the same complainant against Marden and Rowell in the United States circuit court for the district of Massachusetts, that court held that a printing press which had been sold by the Duplex Printing-Press Company to the defendants therein infringed the first, second, and seventh claims of the Kidder patent and the twelfth claim of the Stonemetz patent, on a full hearing of the issues raised. 64 Fed. 782. The Duplex Printing-Press Company had charge of the litigation for the defendant therein, and conducted it by its counsel. The record and evidence in that cause accompanied one of the affidavits filed in support of the motion for a preliminary injunction in the court below. The injunction was resisted below by counter affidavits, and the exhibition of patents, two English and one French, for printing presses, which were not introduced in the Massachusetts case, and were only discovered after the decree in that court had been rendered. As soon as the Massachusetts decree was entered, the defendant company, which was engaged in manufacturing the alleged infringement, made a mortgage of all its assets, real and personal, of whatever kind, to secure an indebtedness aggregating more than $100,-000, to its directors and other persons intimately associated with its management. The action of the court below is shown in the following order and memorandum filed by the court at the same time.

"This cause coming on to be heard upon the bill of complaint, affidavits on the part of complainant, the exhibits referred to therein, and on the record of pleadings, proceedings, and printed record of evidence and exhibits in the case of the same complainant against Marden and Rowell in the United States circuit court for the district of Massachusetts, and upon the order to show cause why an injunction should not be granted, and affidavits, and patents and exhibits and models referred to therein, on the part of the defendant, and after hearing counsel for the respective parties, it is ordered (for the reasons set forth in the memorandum filed by the court) that an injunction issue restraining the defendant from infringement of the first, second, and seventh claims of the Kidder patent in suit, and the twelfth claim of the Stonemetz

patent in suit, or either of them, until the further order of the court, but that the said injunction be stayed pending an appeal to the circuit court of appeals, but only so far as the same would affect the making, shipping, or selling of the two completed and five uncompleted machines now at the defendant's works, or in process of construction by the defendant, upon the filing of a bond by the defendant in the penal sum of $7,000 to answer to the complainant for any damages or profits accruing by reason of the making or sale of said seven machines."

### The memorandum filed by the court below is as follows:

"The injunction is granted in this case on the record in the Massachusetts case, and the newly-discovered evidence submitted on both sides, and after hearing counsel for both parties, and the exhibits submitted on behalf of the defendant. This disposition of the motion for the injunction is made with a view of enabling the court of appeals to review and finally determine on their merits all the questions between the parties before this court, unembarrassed by the question of the exercise of the discretion of the circuit court, and the injunction is suspended so far as the sale of the two machines already completed and the five now in process of construction is concerned, on the defendant giving bond of $7,000."

We do not fully understand the meaning of the learned judge's memorandum in the court below. The motion for a preliminary injunction necessarily involved the exercise by him of a sound judicial discretion in granting or withholding it. By no action of his could he enable this court finally to determine all the questions between the parties to the action, because it is not within the proper province of this court to do so on an appeal from an order granting a preliminary injunction. This is settled by the decision in Blount v. Societe Anonyme, etc., 6 U. S. App. 335, 3 C. C. A. 455, 53 Fed. 98, where Mr. Justice Jackson, speaking for this court, discusses the proper scope of action by a circuit court of appeals upon an appeal from a preliminary injunction under the seventh section of the circuit court of appeals act. We are to consider the correctness of the order from the same standpoint as that occupied by the court granting it, and if we find, after a consideration of the grounds presented to that court for its action, that its legal discretion to grant or withhold the order was not improvidently exercised, we should not disturb its action. The judgment of the circuit court of Massachusetts is entitled to the same consideration in this court, as a reason for granting the preliminary injunction, as it had in the court below. American Paper Pail & Box Co. v. National Folding Box & Paper Co., 1 U. S. App. 283, 2 C. C. A. 165, 51 Fed. 229. Upon a final hearing upon the merits, it would be different; for then considerations of comity might properly have weight with the court below, which we should not hesitate, as an appellate court, to disregard in finally settling the rights of the parties. The language of the memorandum leads us to suppose that the order made by the court was with the expectation that this court would on the present hearing render such a judgment as to make a further hearing on the merits below unnecessary, and was, therefore, made to provide a status quo for the parties during the six months within which it was hoped the judgment of this court could be secured. This erroneous view of the power and duty of this court, upon which the order was based, makes it necessary for us in this particular case to

consider the motion for preliminary injunction de novo, and, because of the failure of the court below to exercise the proper discretion, to exercise it ourselves, and make the order which should have been made. The patent of Kidder was for a printing press in which the printing is done directly from type set in a flat bed, as distinguished from those presses in which curved stereotyped plates are used, taken from the type. In flat-bed presses, either the bed may move with the paper under the impression cylinder, or the bed may be stationary, and the cylinder be movable or locomotive. Flat-bed presses are better for newspapers with small editions, because such newspapers do not need the great rapidity of the stereotype presses, and may thus avoid the additional expense incident thereto. A press is said to be a perfecting press when, at the same time, it prints on both sides of the paper. It is a web press when it receives and prints upon a continuous web or roll of paper as it is unwound, and not upon cut sheets. Before Kidder, there were web perfecting stereotyped presses. There were flat-bed web presses. But Judge Carpenter, considering this patent in the case referred to above, held that until Kidder's invention there never had been a web perfecting stationary flat-bed press with a locomotive cylinder. He held, moreover, that, while the past art showed web presses with movable flat beds and stationary cylinders, Kidder's was the first web press that showed a locomotive cylinder with a stationary flat bed. There had been sheet presses with such a combination, but none adapted to the printing of a web. In the Kidder press, the beds of type for the two sets of paper were placed opposite to each other in a vertical position, and parallel. Between them two compression cylinders in the same horizontal plane were arranged to move up and down. Accompanying each cylinder, on the carriage with it, was a guide roller. The web was passed from the spool between clamp rollers, over the first guide roller, round the first cylinder, between it and the corresponding type bed, thence around the second cylinder, and between it and its type bed to its guide roller. The upward movement of the two impression cylinders while the end of the web was held stationary by the clamp rollers brought each cylinder into contact with its type bed, pressing the web against the type, or nipping it, as the phrase is. Each cylinder moved in a moving fold or wave of the paper, and printed the whole length of the bed. On the downward return of the cylinders, they were drawn inward, nearer to each other, so that they did not contact with the type beds. During the backward stroke, the web was slipped round the cylinders and fed far enough so that, at the next upward movement of the cylinders, that part of the web which had been printed on one side by the first cylinder was now round the second cylinder, where its other side could be printed. The Kidder drawings also show a press with but one cylinder, and therefore nonperfecting, in which the type bed is in a horizontal position. The vertical position of the two type beds is made necessary in Kidder's co-operation of the two impression cylinders, because if the two beds were placed in a horizontal and parallel position, the type of the upper bed must fall out.

The first claim of the Kidder patent, which presents the chief subject of controversy in this cause, was as follows:

"In combination with a stationary bed and an impression cylinder traveling over it, guides for the web, one at each side of the impression cylinder, and a feeding device which feeds the proper length of web while the impression is thrown off, all substantially as described."

The machine of the defendant company, which is manufactured under a patent issued to one Joseph L. Cox, of later date than the patents sued upon, has in it the combination of a stationary bed and an impression cylinder traveling over it, guides for the web, one at each side of the impression cylinder, and the feed device, which feeds the proper length of the web, while the impression is thrown off. A stationary bed and the impression cylinder traveling over it, together with the guides for the web, one at each side of the impression cylinder, used by the defendant in its machines, are substantially reproductions of the same forms shown by Kidder in his patent. The feeding device of Cox, used by the defendant, is different from that used by Kidder, but feeding devices for measuring the proper length of web, and at the proper time, were old, so that the substitution of Cox's feeding device for that of Kidder might be an improvement, but would hardly relieve Cox from the charge of infringement. The real question in the case, as presented to the Massachusetts court, as presented to the court below, and as presented to us here, is whether the Kidder patent was void with respect to this first claim, for want of novelty. The history of the art showed that a printing press with a stationary bed and an impression cylinder traveling over it was old, and that the combination of these elements with guides for sheets, instead of guides for the continuous web of paper, one at each side of the impression cylinder, was also old. The same art showed that the combination of a moving bed and a stationary impression cylinder with guides for the web, one at each side of the impression cylinder, and a feeding device, which fed the proper length of web, while the impression was off, was also old. Judge Carpenter, in his opinion in the Massachusetts case, said:

"The substance of the Kidder invention in the original patent and in the improvement of Stonemetz seems to me to be the production of a device which shall print a web of paper, stationary at the two ends thereof, by means of an impression cylinder moving in a moving fold of that web. Such a device I do not find in any prior structure. The patent to R. Cummings, No. 83,472, issued October 27, 1868, shows a web of paper, and a fold and an impression cylinder. If this mechanism were reversed in action, and the necessary resultant change made in the mode of operation, so that the web of paper should be held stationary during the operation of printing, then, indeed, the function of the Kidder invention would appear. But this cannot be done without a change in the essential operation of that press. The devices, in substance, of the Kidder invention are there, but the mode of operation is not there."

Of the three patents produced in the court below, which were not shown to the Massachusetts court, the only one we need to notice is the Tannahill patent. This is a patent which, if it is operative, will print a web of paper stationary at the two ends thereof, so far, at least as the stationary type bed is concerned, by means of an im-

pression cylinder moving in the moving fold of that web. The guides mentioned in the first claim of the Kidder patent, however, are not present in the Tannahill patent in such a way as to be effective as such. One end of the web, instead of being exactly stationary, is wound around a take-up spool as the cylinder progresses in printing the stationary part of the web between it and the stationary bed. The fold of the web moves with the moving cylinder. We are inclined to think that the Tannahill patent would confine the scope of the Kidder invention to the particular form therein shown, of moving a cylinder in a moving fold of the web, but that particular form seems to be shown also in the defendant's machine. We do not think, therefore, that, on a hearing for a preliminary injunction, the fact that the Massachusetts court did not have before it the Tannahill patent ought to affect materially its decree as a basis for preserving the status quo pending the hearing in the court below. It has been decided in this court, and in the courts of appeals of the Second and Seventh circuits, that an adjudication of another circuit court than that whose action is being considered, finding the validity of the patent and its infringement, is a sufficient ground, not only in the circuit court for an order granting a preliminary injunction, but also in the appellate court for affirming such an order. Blount v. Societe Anonyme, etc., 6 U. S. App. 335, 344, 3 C. C. A. 455, 53 Fed. 98; American Paper Pail & Box Co. v. National Folding Box & Paper Co., 1 U. S. App. 283, 2 C. C. A. 165, 51 Fed. 229; Electric Manuf'g Co. v. Edison Electric Light Co., 10 C. C. A. 106, 61 Fed. 834.

The same conclusion must be reached with respect to the second and seventh claims of the Kidder patent and the twelfth claim of the Stonemetz patent. The second claim of the Kidder patent is as follows:

"In combination, two stationary beds, two traveling impression cylinders, and a feeding mechanism, substantially as described, combined together, and with suitable guides, substantially as described, and operating to print both sides of a web, as set forth."

The seventh claim is as follows:

"T ꞏ web perfecting press above described, consisting of the two stationary beds, the two traversing impression cylinders, the two sets of inking apparatus, the web-guiding mechanism, substantially as described and the intermittently operating web-feeding mechanism, substantially as described, all operating together, substantially as described."

The Stonemetz, which is an improvement on the Kidder patent, contained the twelfth claim, as follows:

"The combination, in a printing-machine, of the side frames, A,A', the stationary type beds, B,B', with the traveling cylinder carriage, I, carrying the impression-cylinders, E,E, which operate both forward and backward on said type beds, substantially as and for the purpose set forth."

These claims were held by Judge Carpenter to be infringed by the defendant's printing press.

Stonemetz improved upon Kidder in this wise: He made his locomotive cylinder run upon type beds horizontally placed in the same plane, and, by means of rollers, he passed the web from one locomotive cylinder to the other, arranging his feed between the forward

and backward strokes of the cylinder so that the part of the web upon which the first cylinder had printed would be presented with its other side, by the second cylinder, to its type bed, on the return stroke. He was thus able to print upon both sides of the paper, upon each stroke of the cylinders, and save the time taken in the Kidder patent upon the back stroke, when no printing was done. Cox, in the defendant's press, uses horizontal flat type beds, not in the same plane. He places one above the other, and he passes the web over one locomotive cylinder, and over rollers up to the other, operating on the plane above it. Judge Carpenter held, after a full hearing, that the Kidder perfecting claims were valid, that the Stonemetz device was an improvement on Kidder, and, further, that the defendant's machine was a mere change of position of the parts shown in the Stonemetz patent, and was not a substantial deviation therefrom. There is no controlling reason advanced why, with respect to these claims, upon the motion for a preliminary injunction, the decision of Judge Carpenter should be departed from. No new evidence has been introduced upon this perfecting feature and we think that the decree of Judge Carpenter would justify a preliminary injunction. We reach this conclusion without any intention of foreclosing the action of the court below or of this court upon any of the points here mooted when the case comes on for final hearing.

Coming now to consider the conditions upon which such preliminary injunction should be granted or withheld, we propose, for the reasons stated in the opening of this opinion, to modify the order made below, because made under a misconception of the probable action of this court. The giving of the chattel mortgage by the defendant raises a strong presumption of fact that the complainant could not enforce a decree for damages against defendant, should one be awarded. On the other hand, the complainant is not manufacturing any presses under either the Kidder or Stonemetz patent. and the loss which it will sustain by infringements thereof will be confined to injury to its naked rights under the patent, with no consequential injury to its business. An injunction against defendant will break up its business, and throw several hundred men out of employment. Its loss from an injunction will be out of proportion to complainant's loss from infringement. Balancing the inconvenience of the parties, we think the order should be that the complainant may have a preliminary injunction against infringement by defendant of the first, second, and seventh claims of the Kidder patent and the twelfth claim of the Stonemetz patent by manufacturing the press it is now making, unless, within 10 days from the going down of the mandate, the defendant shall give a bond, with sureties to be approved by the court below, in $25,000, conditioned to pay all damages which may be awarded in this action to the complainant from the defendant by reason of the manufacture of its presses after the giving of such bond. The order appealed from is modified accordingly, costs of appeal to be divided.

Addendum to the Opinion. It is not intended that the bond above required shall take the place of the bond already given in the court

below, which shall remain in full force and effect. If the appellants desire it, the bond for $25,000 may be framed to cover not only the damages for the manufacture of the machines, but also the damages recoverable from the customers of appellants for the use of the machines sold.