## CITY OF COUNCIL BLUFFS et al. v. OMAHA & C. B. ST. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. November 19, 1925.)

No. 6799.

**1. Appeal and error ⊚⇒954(1)—Injunction ⊚⇒ 135—Granting of interlocutory injunction within discretion of court of original jurisdiction, whose action will not be disturbed, in absence of abuse or violation or departure from rule of law or principle of equity.**

The power and duty to grant or deny an interlocutory injunction is intrusted, not to the appellate court, but to the court of original jurisdiction, and, unless it clearly appears that the latter court has violated some settled rule of law, or departed from some clear rule or principle of equity, its order in this regard will not be reversed or changed, without clear proof that it abused its discretion.

**2. Injunction ⊚⇒132—Power to issue is to prevent irremediable injury.**

Power to issue temporary injunction exists principally to enable court to prevent threatened or continuous irremediable injury before claims of parties can be adjudicated.

**3. Injunction ⊚⇒136(3)—Interlocutory injunction granted, where questions of law or fact are difficult, and injury to moving party irreparable, if denied.**

An interlocutory injunction should be granted, if questions of law or fact are grave and difficult, an injury to moving party will be irreparable, if denied and final decision is in his favor, while, if granted, inconvenience and loss to opposing party will be inconsiderable, and may be indemnified by bond.

**4. Carriers ⊚⇒18(1)—No estoppel to secure relief from confiscatory rates by reason of long acquiescence.**

Street railway company cannot be estopped from securing relief in equity from confiscatory rates by reason of its having acquiesced for long period in wrongful taking of its property without just compensation.

**5. Carriers ⊚⇒18(6)—Temporary injunction, stopping alleged confiscation of property, on giving of bond, held proper.**

In proceedings against city by street railway company to prevent confiscation of property and to obtain higher fares *held*, in view of the serious and difficult questions presented, it was not error to issue temporary injunction, stopping alleged confiscation on giving of indemnity bond, and postponing adjudication of such questions until parties had opportunity to be heard.

**6. Appeal and error ⊚⇒874(2)—On appeal from decree for preliminary injunction, appellate court ought not to determine questions conditioning merits of case.**

On appeal from decree for preliminary injunction, appellate court ought not to determine questions conditioning merits of case, since adjudication of such questions should not be made until parties have presented evidence and arguments, adjudication would not estop parties in subsequent trial of issues of case or otherwise, and since decision would be made on different state of facts and arguments from those presented at final hearing.

**7. Carriers ⊚⇒18(6)—Under contract between city and street railway, mandatory injunction might issue to increase rates until decision on merits.**

Under contract entered into between city and street railway by city ordinance, stating that intention is "to grant right to said company to obtain a reasonable profit on its investment," it is thereby intended to establish and maintain rates that are not confiscatory as the normal status quo, so that, where rates thus established are shown to have become confiscatory, court had power to prevent constitutional violation and irreparable injury by mandatory injunction increasing rates until decision of case on merits.

**8. Carriers ⊚⇒18(6)—Temporary injunction, granting increased rates, held not unreasonable.**

In proceedings by street railway company to enjoin continuance by city of alleged confiscatory rates, temporary injunction granting increase of rates until determination of suit on merits *held* not improvident, unjust, or unreasonable.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Suit by the Omaha & Council Bluffs Street Railway Company against City of Council Bluffs and others. From a decree granting an interlocutory injunction, defendants appeal. Affirmed.

D. E. Stuart and Raymond A. Smith, both of Council Bluffs, Iowa (V. A. Morgan and Kimball, Peterson, Smith & Peterson, all of Council Bluffs, Iowa, on the brief), for appellants.

Emmet Tinley, of Council Bluffs, Iowa (Tinley, Mitchell, Ross & Mitchell and Ed-

win D. Mitchell, all of Council Bluffs, Iowa, on the brief), for appellee.

Before SANBORN and KENYON, Circuit Judges, and SCOTT, District Judge.

WALTER H. SANBORN, Circuit Judge. This is an appeal by the city, the defendant below, from a decree of an interlocutory injunction to prevent it, until there can be a full hearing and a considered decision of the questions of law and fact which this case presents, or until the further order of the court, from compelling the street railway company to suffer the alleged continuous taking of its property without just compensation by requiring it to carry passengers on the railway it is operating at confiscatory rates, in violation of the Fourteenth Amendment to the Constitution. The rates alleged to be confiscatory were substantially 5 cents for each continuous ride of each passenger within the city of Council Bluffs, and 10 cents for each continuous ride of each passenger from Council Bluffs to Omaha or from Omaha to Council Bluffs. The decree and the injunction based thereon restrained the city from compelling the railway company to carry passengers at the 5-cent rate, restrained the railway company from charging for the transportation of adults in Council Bluffs in excess of 7 cents cash, for tickets for children in excess of 3 cents, for tickets for school attendants in excess of 5 cents, for transportation between Council Bluffs and Omaha in excess of 10 cents cash, in excess of 6⅔ cents each for tickets, and made other immaterial restrictions. In its decree for the injunction the court appropriately provided that the railway company should issue to each passenger who paid a rate in excess of the rate charged at the time the order was issued a receipt for that excess, and that the railway company should give a bond for $100,000, with approved sureties, conditioned to repay to any passenger who paid a rate in excess of that charged at the date of the order the sum paid above a reasonable and just fare, and the court also provided that the decree should become effective only when the required bond should be approved and given.

These are established rules for the governing of the issue of such injunctions and the review by appellate courts of orders for such issues therefor:

[1] First. The power and duty to grant or deny an interlocutory injunction has been intrusted by the law to the judicial discretion, not of the appellate court or of any of its members, but of the court of original jurisdiction, and, unless it clearly appears that the latter court in its action has violated some settled rule of law, or departed from some clear rule or principle of equity established for its guidance, its order or decree in this regard may not be reviewed or changed by the appellate court, without clear proof that it abused its discretion. American Grain Separator Co. v. Twin City Separator Co., 202 F. 202, 206, 120 C. C. A. 644, and cases there cited; Pierce v. National Bank of Commerce (C. C. A.) 268 F. 487, 498; Stokes v. Williams, 226 F. 148, 156, 141 C. C. A. 146.

[2] Second. The controlling reason for the existence of the judicial power to issue a temporary injunction is that the court may thereby prevent a threatened or a continuous irremediable injury to some of the parties before their claims can be thoroughly investigated and advisedly adjudicated.

[3] Third. If the questions of law or fact presented to the court of original jurisdiction in a suit for an injunction are grave and difficult, and the injury to the moving party will be certain, great, and irreparable, if the motion for the interlocutory injunction is denied and the final decision is in his favor, while, if the decision is otherwise, and the injunction is granted, the inconvenience and loss to the opposing party will be inconsiderable, or probably may be indemnified by bond, the injunction usually should be granted. Blount v. Société Anonyme du Filtre, etc., 53 F. 98, 101, 3 C. C. A. 455; Love v. Atchison, T. & S. F. Ry. Co., 185 F. 321, 332, 107 C. C. A. 403; and cases there cited; American Smelting & R. Co. v. Bunker Hill & S. Min. & C. Co. (D. C.) 248 F. 172, 182; Chew v. First Presbyterian Church (D. C.) 237 F. 219, 222; Magruder v. Belle Fourche Valley Water Users' Ass'n, 219 F. 72, 82, 135 C. C. A. 524; Wilmington City Ry. Co. v. Taylor (D. C.) 198 F. 159, 197, 198; Carpenter v. Knollwood Cemetery et al. (C. C.) 188 F. 856, 857.

The respective rights of the railway company and the city are conditioned and governed by an ordinance passed by its city council on December 6, 1897, whereby it granted to and vested in the predecessor in interest of the complainant for the term of 50 years the right to equip, maintain, and operate a street railway along and over the streets of Council Bluffs on certain conditions and for certain considerations stated therein one of which was that, if the grantee should enter into traffic relations whereby it should carry passengers into East Omaha, it should not charge to exceed 5 cents for a continuous ride

for a single passenger each way between any point on its line in Council Bluffs and Twenty-First street in East Omaha, from point to point on its line in Council Bluffs east of the Missouri river, nor to exceed 10 cents for a continuous ride for a single passenger each way between any point on its line in Council Bluffs and the end of its line, or the end of the line or lines with which said company had traffic relations. Section 8 of the ordinance reads in this way:

"That the right and authority is hereby reserved and vested in the city council of the city of Council Bluffs to pass ordinances from time to time, to exercise any power, right or privileges that are now conferred by statutes or that may be hereafter enacted, relating to street railways, their bridges and appurtenances, and to impose such restrictions and regulations on said company as shall be just, equitable and reasonable. This provision shall apply to all lines of street railway owned, leased or in any manner operated by said Council Bluffs, Lake Manawa & East Omaha Construction Company (the original grantee of the ordinance), its successors and assigns: Provided, however, that the rates of transportation over said company's line shall not be changed by the city council oftener than once in fifteen years during the term of this franchise, the intention hereof being to grant the right to said company to obtain a reasonable profit on its investments and the rights of the city to require conformity to changes in the conditions within the periods named, to the end that mutual benefits be had."

Counsel for the city contended in the court below, and still insist, that under section 767 of the Code of Iowa of 1897 the city was authorized to make the ordinance contract, that the true construction and the legal effect of that contract was and is to bind the railway company to carry passengers over its railways at the rates there specified during the entire 50 years of that contract's term, and that it is immaterial whether those rates are or are not now confiscatory. Southern Iowa Elec. Co. v. Chariton, 255 U. S. 539, 542, 41 S. Ct. 400, 65 L. Ed. 764.

On the other hand, counsel for the railway company maintained in the court below, and still assert, first, that the authority to fix rates for the transportation of passengers on street railways was a legislative power inherent in the state, that it had never been delegated to the city, that its ordinance contract was therefore ultra vires and void; and, second, that if that contract was valid, its true meaning and effect must be determined by putting oneself as far as possible in the place of the parties when their minds met upon the terms of that contract, and then deducing their intention from a consideration of their situation, the circumstances surrounding them, the purpose and object of the contract, and the entire agreement and every part of it (Pressed Steel Car Co. v. Eastern Ry. Co. of Minnesota, 121 F. 609, 611, 57 C. C. A. 635); and that, when so considered, the intention of the parties was, and the legal effect of the ordinance contract was and is, to bind the city by an enforceable agreement, in case the prescribed rates become confiscatory, to change or permit the railway company to change the maximum rates for the transportation of passengers, at least once in 15 years, so that they will enable the railway company to earn its expenses of operation and maintenance and a reasonable compensation for the use of its capital invested in the property, used and useful for its railway purposes, so as to enable it, as the contract reads, "to obtain a reasonable profit on its investments."

[4] Counsel for the city claimed, and still claim, that if the legal effect of the contract is not to bind the railway company to transport passengers during the entire 50 years at the rates therein specified, nevertheless, the railway company is estopped from seeking any relief in equity, because it has transported passengers at those rates for more than 20 years. But during part of that time, perhaps until about 1919 or 1920, it does not appear that the rates were confiscatory, while the substantial preponderance of the evidence is that they have been so since 1920. If, as the railway company claims, this contract was either void, or, if it contained an enforceable contract of the city to change the maximum rates so as to make the rates permitted compensatory, there could have been no estoppel. No estoppel from maintaining suit and securing relief in equity from the continuance of a constant unconstitutional taking day by day of one's property without just compensation arises from the fact that he has been enduring such a taking for a long time. The acquiescence of the victim of a wrongful continuing injury in its infliction in the past constitutes no defense against or estoppel of his right to an injunction against its future continuance. Love v. Atchison, T. & S. F. Ry. Co., 185 F. 321, 322, 332, 107 C. C. A. 403; Menendez v. Holt, 128 U. S. 514, 523, 524, 9 S. Ct. 143, 32 L. Ed. 526.

[5] Counsel for the city argue that the court below committed an error of law and disre-

garded established rules in equity, because at the hearing on the application for the injunction it did not then decide and adjudicate the questions of law and equity presented by the claims of these parties which have now been recited, and deny the injunction. These conflicting claims have been persuasively and forcibly argued and exhaustively briefed in this court. We have read the briefs and many of the authorities cited, and are unable to resist the conclusion that the questions inhering in these conflicting claims of the parties were so grave and difficult that there was no error of law or disregard of any rule or principle of equity in the action of the court below in issuing the temporary injunction, stopping the alleged confiscation upon the giving of the indemnifying bond, and postponing the adjudication of these questions until after opportunity had been given to the parties to present their evidence and to apply the rules of law and equity thereto. This case falls far within the third rule for the disposition of motions for preliminary injunctions, stated in the earlier part of this opinion.

[6] We recognize the established rule that, under an appeal from a decree for a preliminary injunction, the appellate court ought not to determine crucial questions conditioning the merits of the case: (1) Because their adjudication of such questions ought not to be made until after the parties have had an opportunity to present their evidence and their arguments upon the entire proof; (2) because such an adjudication would not estop any of the parties in the subsequent trial of the issues of the case or otherwise; and (3) because such a decision would in many cases be made on a different state of facts and upon different arguments from those presented at the final hearing, and we neither decide nor intimate our opinion upon those questions. Columbus Watch Co. v. Robbins, 52 F. 337, 339, 340, 3 C. C. A. 103; Blount v. Société Anonyme du Filtre, etc., 53 F. 98, 102, 3 C. C. A. 455.

[7] The contentions of counsel for the city that the third rule, under which this case falls, applies only to cases in which the effect of the injunction is to preserve the status quo, that it does not authorize or permit a preliminary mandatory injunction the effect of which is to modify or change the existing state of affairs, and that this is such an injunction, have been considered. It is true that the effect of the injunction was to change the confiscatory rates of transportation in operation when it was issued to those less confiscatory rates stated in the injunction. But the broader and more rational view of this case is that, since the contract clearly shows that the intent of the parties to the contract was thereby to establish and maintain rates that were not confiscatory, "to grant the right to said company to obtain a reasonable profit on its investments," as the contract reads, and undoubtedly it originally did establish such rates, that was the intended, normal, and actual status quo. The war, the depreciation in the value of the dollar, the consequent increase of the cost of labor and supplies, caused those rates to become confiscatory, and the real purpose and the actual effect of the injunction were to restore that normal and original status quo. Moreover, the maintenance and enforcement of the rates of fare prescribed by the contract was, at the time the injunction was issued, continually taking the property of the railway company without just compensation, in violation of the Constitution to its irreparable injury. The controlling reason for the existence of the judicial power to issue a temporary injunction is that the court may thereby prevent such injury. The railway company had no other remedy for the irreparable injury that was being inflicted upon it. If the continuance of that injury could not be prevented by a temporary injunction, it could not be prevented at all, and there is, in our opinion, no doubt that the court below had the judicial power to prevent by a mandatory injunction, if necessary, the continuation of this violation of the Constitution and irreparable injury until the hearing and decision of this case on the merits. Love v. Atchison, T. & S. F. Ry. Co., 185 F. 321, 332, 107 C. C. A. 403, and cases there cited.

The evidence before the court below upon the issue whether or not the contract rates were so low that they were confiscatory, and the arguments of counsel upon that question in the briefs, have been read and considered, and we have reached the conclusion that the greater weight of the evidence sustains the finding of the court below.

[8] Nor was the exercise of the judicial discretion of the judge below in issuing this injunction either improvident, unjust, or unreasonable. He was put in a place in which the duty was imposed upon him by the Constitution and the laws of the nation to decide whether he would prevent the continuance of the violation of the Constitution and the infliction of the irreparable injury upon the complainant, by enjoining the continuance thereof until the case could be heard on evidence and decided, or would deny the injunction and let the violation and injury con-

tinue. There was no abuse of his judicial discretion in the adoption of the former alternative.

The decree below must be, and it is, affirmed.