### BACKUS v. JAFFRAY et al.
#### No. 9984.

Circuit Court of Appeals, Eighth Circuit.
Nov. 7, 1934.

Ernest A. Michel, of Minneapolis, Minn. (Tom Davis, of Minneapolis, Minn., on the brief), for appellant.

G. A. Youngquist and Rex H. Kitts, both of Minneapolis, Minn. (John B. Faegre, Charles R. Fowler, Cobb, Hoke, Benson,

Krause & Faegre, and Fowler, Carlson, Furber & Johnson, all of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER and SANBORN, Circuit Judges, and DEWEY, District Judge.

GARDNER, Circuit Judge.

This is an appeal from an order entered by the lower court in a receivership proceeding authorizing the receivers "to cause Minnesota Forest Products Company to complete the sale of the land and the timber thereon, described in Exhibit 'A' attached to the petition herein, to the United States of America for a consideration of $5.00 per acre, if and when the United States of America definitely offers to purchase said property for the consideration named."

The Minnesota & Ontario Paper Company, in receivership, owns all the capital stock of the International Lumber Company, which in turn owns all the capital stock of the Minnesota Forest Products Company, and the stock of the last-named company is pledged as collateral security to first mortgage bonds of the Minnesota & Ontario Paper Company. The timber lands involved are owned by the Minnesota Forest Products Company, and comprise 34,458.01 acres, all located in Cook county, Minn. The order appealed from was entered upon petition and order to show cause, asking authority of the court to make the sale.

It is observed that title to the lands is not vested in the receivership estate, but these timber lands constitute assets of an independent corporation not in receivership, whose stock is owned by the receivership estate. The appellant, E. W. Backus, as a stockholder of the Minnesota & Ontario Paper Company, filed objections to the sale, and after hearing, at which appellant appeared in person and by counsel, the order was entered.

On this appeal, it is urged that "such sale is inadvisable and against the best interests of the receivership estate and of all the parties interested therein." In other words, there is no question raised as to the regularity of the proceedings or the legality of the sale. In their brief, counsel for appellant state: "The one proposition to determine is whether or not the trial court erred in approving the sale of the property in question for $172,000.00, in the face of the strong testimony that the property was worth in the neighborhood of $600,000.00."

The lower court found that the sale was proposed by the receivers acting in good faith, and would tend to the preservation of the assets of the receivership estate and of subsidiary companies, and was advisable and for the best interests of the receivership estate and all persons interested therein. This finding of the court is, of course, presumptively correct. The application for authority to make the sale was addressed to the sound judicial discretion of the lower court. City of Council Bluffs v. Omaha & C. B. St. Ry. Co. (C. C. A. 8) 9 F.(2d) 246; Stokes v. Williams (C. C. A. 3) 226 F. 148. The question which we have to determine is whether or not the evidence shows an abuse of such discretion.

It clearly appears from the testimony that the land, aside from the standing timber on it, has only a negligible value. It is described as ledge rock covered with a very thin layer of clay and humus, 99 per cent. of the area being totally unfit for agriculture. It is very rough and more or less mountainous. The principal value of the timber lies in the white pine and spruce pulpwood. Other lands owned by the Minnesota Forest Products Company in Cook county, lying immediately east of the lands in question, were cruised in 1920 and 1921 by the same party who at that time cruised the lands in question. These lands were again cruised in the fall of 1933, and the latter cruise showed only 45 per cent. as much pine and 25 per cent. more spruce pulpwood as did the cruise made in 1920 and 1921. It is said by witnesses that the timber had depreciated greatly in the intervening years, to the extent of about one-third. Other operators in Cook county have by actual experience found the timber running about 40 per cent. below the cruise estimate of 1920 and 1921. The timber is low grade, old, overmature, and defective; 75 per cent. of the balsam is diseased and fallen down; the spruce is left unprotected and deteriorates rapidly; and the fire hazard and cost of logging are increasing because of these conditions. The record indicates that this region is the most hazardous for fire in the state of Minnesota. The timber stand is thin and scattered, and there is not enough volume at any one place to make it an economical logging unit. There are numerous lakes and hills, all running east and west, making it impracticable to carry the timber northward, while the water courses on the south side, toward Lake Superior, are trout streams and not adapted to the floating of timber. The Minnesota & Ontario Paper Mill at International Falls is 125 miles distant, but by any road that could be built it would be two or three times that distance. It is not feasible

to build such a road, nor is it feasible to get the timber to any other mill.

There is testimony indicating that the logging costs on spruce pulpwood are $4.50 to $5 a cord, and the transportation charges average $4.50 a cord, making an operating cost of $9 per cord, while the Minnesota & Ontario Paper Company, for several years past, has paid but $6.50 a cord for pulpwood delivered at its mill at International Falls, so that under present conditions this spruce pulpwood could not be utilized at a profit.

For a number of years last past, the taxes on the land have been something in excess of $20,000 per annum. This has been reduced somewhat on application of the receivers, for the years 1930, 1931, and 1932.

The receivers endeavored to sell the land and timber to the state of Minnesota. They made inquiry of the Hammermill Paper Company with reference to selling the lands to that company, but were advised that that company did not consider the timber of any value, after figuring the cost of bringing it to market. Inquiry was also made by the receivers of the Northwest Paper Company, whose timber is interspersed with that here in question, and which has a railroad running through it; but the receivers were advised that the company would not take these lands as a gift, and that if that company could dispose of its railroad investment, it was perfectly willing to abandon the Cook county timber lands which it now owns.

A sale of the land to the United States, in connection with its forestry program, was sought by the receivers at a price of $7 per acre. The United States, however, after making its own cruise of the lands, offered to buy the property at $5 an acre. The receivers express the view that the proposed sale is wise and prudent, and is a very advantageous one, in that it will not only relieve the receivership estate from the taxes, but will permit a saving in the amount of interest on the $170,000 to be paid by the United States.

This summary of facts is based upon the testimony of a large number of competent, reputable, disinterested witnesses.

The power to authorize a sale of this property rests in the trial court. That power is to be exercised in the discretion of that court, and the only question for the appellate court is whether or not, in exercising that power, the court has abused its discretion. We are of the view that the clear preponderance of the evidence indicates that there was no abuse of discretion in authorizing this sale.

The order appealed from is therefore affirmed.