Rogers *v.* Rogers Locomotive Co.

---

JACOB S. ROGERS et al.

*v.*

THE ROGERS LOCOMOTIVE COMPANY et al.

[Filed July 19th, 1901.

1. Where in a petition to set aside the confirmation of a receiver's sale on the ground of an increased bid made at the time of confirmation, on the alleged request of the receivers, there was no allegation that the purchasers were connected with the representation of the receivers, such representation could not avail the subsequent bidders to the detriment of the purchasers.

2. The fact that a bidder, after the confirmation of a receiver's sale, makes a different and better offer, on an application to set aside the confirmation, a few months later, than at the confirmation, will not affect the purchasers.

3. Certain privileges were offered by the receivers in their offer of sale, and a contract of sale, subject to confirmation, was made, wherein the purchasers made the granting of these privileges a condition of their bid, and agreed to open and operate the plant as located as soon as possible. At the time of the confirmation another bid of an increased amount was made by parties who would not undertake to run the works where located. —*Held*, that the contract of sale was properly confirmed, the purchasers being entitled to the special benefit of their contract.

4. Where after the confirmation of the receiver's sale the purchasers took possession and commenced operations on a scale so extensive that the sale could not be set aside without loss to the purchasers, and there was no appeal and there is delay in making the application to set aside the sale, the sale will not be set aside for an increased bid at the time of confirmation.

5. Where the principal stockholder of a corporation whose plant was sold by receivers after consultation with him did not appeal from the order of confirmation, but accepted a lease for a part of the property conveyed, from the purchasers, and did not himself complain of the action of his counsel in failing to make his wishes known at the confirmation, the affidavit of such principal stockholder, objecting to the sale, made in support of an application by another stockholder to have the confirmation set aside, not sufficient to set aside order.

On petition of George H. Longbottom to set aside order confirming sale, &c.

Heard on petition and affidavits, and answers and affidavits.

This is an application by a stockholder of a corporation to set aside an order of the court confirming a written agreement for sale of the plant and other property of the corporation made between the receivers of the corporation and Smith & Halloran, as purchasers, for the sum of $602,000, to be paid or secured as provided by the contract. The contract made on May 1st, 1901, was, by its terms, subject to confirmation and approval by the court. At the time and place fixed by the court for the hearing on the confirmation May 14th, 1901, counsel representing the International Power Company, in open court, made a bid of $655,000 for the property proposed to be sold, offering to deposit with the court $50,000 or $100,000 for the faithful performance of their offer, and to put in a bid on that day before the court.

Rogers v. Rogers Locomotive Co.

Mr. Longbottom, a stockholder of the company, holding seven-teen shares, and who was at this time in the employ of the power company, applied, through the counsel of the power company, who also represented him, to have the action on the contract made by the receivers postponed for the purpose of inquiring into the offer of the power company. After hearing the receivers and such stockholders as desired to be heard upon the question of approval of the contract notwithstanding this offer, the court directed the sale to be confirmed. The order confirming the sale was made on May 14th, 1901. On June 20th, 1901, application was made by the power company on notice to the purchasers and receivers for leave to file a petition in the cause to have the order confirming the sale set aside and the receivers directed to accept their bid. This application was denied on June 24th, 1901, for reasons given in a memorandum sent to counsel. Before the decision upon this application, and on June 22d, at two o'clock in the afternoon, the present petition in the cause to set aside the order was filed by Longbottom, upon which an order to show cause was granted, returnable on June 29th. On the same day of filing this petition and before the filing, according to the statements of counsel, an appeal from the order confirming the sale had been signed by or on behalf of Longbottom and mailed to the clerk for filing, and notice of the appeal was served upon the solicitor of the purchasers on June 22d, 1901. Upon the return of the rule, application was made by the purchasers to dismiss the petition because of the pendency of the appeal, and the petitioner thereupon withdrew the appeal by leave of the court, and over the objection of the counsel for the purchasers, and the application on the present petition was then brought on for hearing.

The substantial ground upon which the petition to set aside the order confirming the sale is based, is that the receivers, or one of them, susbsequent to the execution of the contract of May 1st, invited or induced the presentation of a higher bid from the representatives of the power company and assured them that a bid of $650,000, if made by them at the time and place fixed for the hearing on the confirmation, would be accepted,

8

unless a higher bid was then made, and that this bid of the power company at the time of the hearing was made pursuant to this suggestion, that the receivers failed to inform the court that this bid was made under these circumstances, and of their promise to accept the bid.

It is also alleged that Jacob S. Rogers, the holder of a majority of the stock, who was present in court, desired the power company's bid to be accepted, and requested his counsel, who was also counsel for the receivers, to so state, but that this statement was not made. It is claimed that the confirmation of the contract of sale by the court was made without its being fully informed of the circumstances of the power company's bid, or of the attitude of Mr. Rogers toward the same, and of his opposition to the acceptance of Smith & Halloran's bid. It is further alleged that the sale to Smith & Halloran, on the terms of their bid, is inadequate, and, in view of the higher offer of the power company, should not be accepted, the offer being now made to pay the entire amount of the bid in cash, if necessary. Petitioner further alleges that the plant has depreciated; that it is not an adequate security for the bonds proposed to be issued, $500,000 proposed to be issued; that the purchasers have paid only $25,000 of the $102,000 cash payment, provided by the contract, and that the contract of sale has not yet been executed, although the purchasers have, since the confirmation of the contract of sale, and pursuant to its terms, been put into possession of the works and are now operating the plant, under contracts for work which are charged to have been made before the confirmation and to have been provisional in their character.

The answers of the receivers substantially deny that, after the execution of the contract with Smith & Halloran, they, or either of them, encouraged or invited a further or higher bid from the power company, or their representatives, or informed them that a bid of $650,000 would be accepted if presented by May 14th, and allege that the only statement made by them, or their counsel, to the power company, or their representatives, after the execution of the Smith & Halloran contract, was that, if any bid was subsequently received by them, it would be their duty to submit it to the court, at the time of presenting the contract for con-

Rogers v. Rogers Locomotive Co.

firmation, and they deny that the power company's bid was made in pursuance of any promise or suggestion from them that it would be accepted. As to the petitioner's objection to the confirmation, the receivers allege that, before the execution of the Smith & Halloran contract, he entered into the employ of the power company, and has since continued in its service; that he is, or was, the owner of only nineteen shares of the stock, and that his opposition to the confirmation and his present application is made in the interest of the power company. As to the *status* of Mr. Rogers, the owner of the majority of the stock (fifteen thousand one hundred and two of the twenty-seven thousand and five hundred shares), toward the Smith & Halloran contract, the receivers · say that the contract was made only after consultation with him and on his express approval of all the terms of the written contract, which he had in his possession for a day before the execution and in which terms were added on his suggestion; that on receiving his approval, and not until then, the receivers signed the contract. They deny that the court, at the time of the sale, was not informed that Rogers desired the highest bid to be accepted, and further say that immediately after the confirmation he was informed by them of the decision of the court and of all the proceedings.

They deny the depreciation of the plant, or that it is an insufficient security for the $500,000 bonds, and say that although the title has not yet passed to the purchasers, yet this has been delayed by reason of the character of the numerous papers and attendant contracts required by the contract of sale; that the purchasers have paid or deposited, in the manner required by the contract, the whole $102,000 required for the cash payments, and that the receivers entertain no doubt whatever as to the ability and intention of the purchasers to carry out the contract.

In reference to the good faith on their part in executing the contract with Smith & Halloran and recommending it for approval, notwithstanding the offer of the power company, the receivers, in their answers and affidavits, set out the negotiations and interviews between themselves and the representatives of the power company, previous to the execution of the Smith & Halloran contract, and submit that they then believed, and were

justified in believing, that the power company did not intend to purchase or bid for the property on any basis at all acceptable, and that it was their duty to accept Smith & Halloran's bid and execute the contract in order to prevent great loss.

The answer of Smith & Halloran, the purchasers, sets up that the grounds now alleged by the petitioner for setting aside the order are the same grounds which were urged at the hearing on the application, and that the petition is an application for a rehearing of the matter already decided. They further allege that immediately on the confirmation of the sale, and in pursuance of its terms, they took possession of the locomotive works sold, and put them into operation, and now employ about eight hundred hands, and that the Rogers Locomotive Works, a company controlled by them, and the company which was to be organized pursuant to the contract for the purpose of carrying on the factory and taking the title, has no other means or plant to carry out the obligations it has incurred in relying on the confirmation of the sale, and could not now be disturbed in its possession, without irreparable damage and injury to it and to the purchasers.

The laches of the petitioner, who has seen and known of their possession and operation of the plant, is set up as a bar to relief, and it is further claimed that the rights of the purchasers and of the Rogers Locomotive Works to the property are now vested and cannot be disturbed, so long as they perform the obligations of the contract of sale, and these they allege they have performed.

The pending appeal of petitioner from the order confirming the sale is also set up as a bar to the jurisdiction to open, amend or modify the order.

The affidavits filed with their answer disclose the entire negotiations between the purchasers and the receivers leading up to the final definite contract of sale. The contract, by its terms, provided "that the parties should not be bound by the agreement until it shall have been confirmed and approved by the court of chancery of New Jersey," which confirmation and approval the receivers covenanted that they would, with all reasonable diligence, endeavor to obtain. Upon the execution of the contract, the Rogers Locomotive Works (organized pursuant to the

Rogers *v.* Rogers Locomotive Co.

agreement) entered into contracts for the manufacture of thirty locomotives for $460,000, conditioned on the approval of the agreement; another for ten locomotives for over $130,000 was made since the approval; in addition, they have have submitted bids for $400,000, which will be binding upon acceptance; have made yearly contracts with managers and agents for $12,000, and have now a weekly payroll of $7,000 a week, which, within a week or two, through contracts taken and work laid out, will amount to about $10,000 a week. The purchasers have also procured subscriptions for $250,000 of the capital stock of the Rogers Locomotive Works, which, by the agreement, is to be paid in as working capital before the title is passed to the company; they have paid in, as required by the contract, the $102,000 in cash, and, as they allege, have performed, and are ready to perform, all the obligations on their part contained in the contract. Their affidavits also show that, since the approval of the contract, Jacob S. Rogers has expressed his approval of the contract and sale, and has accepted a lease for a room for his own use in the office building of the old company, which he desired and was promised to him at the time of the execution of the contract, and he held this lease at the time of this application.

*Mr. Robert H. McCarter* and *Mr. L'Amoreaux* (of the New York bar), and *Mr. Guile* (of the Boston bar), for the petitioner.

*Mr. John W. Griggs,* for Smith & Halloran, purchasers.

*Messrs. Pennington & Beam,* for the receivers.

*Messrs. McGee & Bedle,* for the stockholder, *contra.*

EMERY, V. C. (after statement of the issues).

There is no claim in this petition, or in any of the affidavits, that the purchasers, Smith & Halloran, were in any way responsible for or connected with any representation made by the receivers or their counsel to the representatives of the power company, after the execution of their contract with the receivers

on May 1st, 1901, or with any mistake or misapprehension on the part of the power company, as to the time when they could put in a bid. Manifestly, therefore, after the execution of their contract they could not be divested of any rights under the contract, by reason of any transactions between the receivers and the power company, to which they were strangers, and which were in derogation of their rights, if any, under the contract.

The only basis of any claim to deprive them of the benefit of their contract, even if its approval were now the sole question before the court, must therefore be placed solely on the fact that subsequent to their contract, and before its confirmation, a higher bid than theirs was made for the property. On this question as to the effect a higher bid will or should have upon the confirmation by the court of a contract for sale, made at either public or private sale, and which must be confirmed, the rule in this state is, as I understand it, settled beyond dispute. As to public sales, the rule that a sale fairly made will not be disapproved merely because of an increased bid has long been applied. In *Morrisse* v. *Inglis, 1 Dick. Ch. Rep. 306 (Errors and Appeals, 1889)*, over ten per cent. advance was offered; in *Bethlehem Iron Co.* v. *Philadelphia and Seashore Railroad Co., 4 Dick. Ch. Rep. 356 (Chancellor McGill, 1892)*, twenty-one per cent. advance; and in *Bliss* v. *New York Life Insurance Co., 6 Dick. Ch. Rep. 630 (Errors and Appeals)*, $1,000 in advance was offered. In each case the sale was confirmed notwithstanding the increased bid following the principle laid down in the first case, *Morrissee* v. *Ingles,* that the settled policy of our law has been to encourage bidding and purchases at public sales, and that purchasers making *bona fide* bids are to be protected in the advantages of a fair purchase (at *pp. 308, 309*). I do not understand that in the later decision, *Rowan* v. *Congdon, 8 Dick. Ch. Rep. 385 (1895)*, relied on by the petitioner's counsel, the court of errors at all qualified or overruled the rule of these previous cases. No such qualification was declared, and *Rowan* v. *Congdon* was in part based on proof of a misapprehension existing at the time of the sale, by reason of which a purchaser, who was willing to give one hundred and fifty per cent. advance at that time, was not then procured.

It is also the law of this court that for the same reason and upon the same principles, the rule is to be applied to private sales made by guardians and others under authority of the court of chancery. *Leary's Case, 5 Dick. Ch. Rep. 383.* The general settled rule, therefore, is that where the sale is made for a fair price and in good faith, and there is no irregularity, fraud, mistake or legal surprise, with which the purchaser is or ought to be chargeable, the subsequent offer by another bidder of a higher price is not of itself sufficient reason for refusing confirmation of a sale or of reopening the confirmation. Nearly all public and private sales by officers of the court now require confirmation, and to allow such sales to be opened by the mere increase of the bid at the time fixed for confirmation, would practically result in the subversion of the entire system of sale by officers, either public or private, and would make their first contract of sale merely the starting point for bids on the property, instead of a *bona fide,* genuine sale.

In the present case the increase offered was $53,000 in cash payment (less than ten per cent.), the other terms of the contract not being proposed to be changed. The fact that the power company is now said to be ready to pay the entire amount in cash cannot be considered as affecting the purchasers' right, either under the contract or the confirmation. No such offer was made by it on May 14th, 1901, and at that time no objection was made by any stockholder to the amount to be secured by mortgage. So far as the rights of the purchasers to the protection of the order confirming the sale can be affected by any offer of another bidder, it must be an offer previous to, or at the time of, confirmation. For, manifestly, a different or more advantageous offer, made more than a month after the confirmation, and made after the opening and operation of the plant purchased, and after the purchasers' rights under the contract have, by its terms, become vested, is practically an offer to buy the purchasers' property, with the value, if any, since given to it by their purchase, and to buy it for the benefit of the new bidder and the stockholders.

There were special reasons in this case why the mere increase of the bid, by less than ten per cent., should not have deprived

the purchasers of the benefit of the contract. It appears by the record in the case, the bill filed by Jacob S. Rogers and others, the answer filed by the petitioner, Longbottom, and others, by the circular letter of the receivers inviting bids, by the negotiations for sale and the contract finally made, that the resumption of the business formerly carried on by the company on an extensive scale, and its continued operation in the city of Paterson, was desired by all these parties and by the city of Paterson and by transportation companies interested in the continuance of the business. The receivers, availing themselves of this condition of affairs, were enabled to offer to purchasers certain privileges or advantages from the city and these companies connected with the operation of the plant. These privileges tended to attract purchasers, and were substantial benefits secured to the stockholders in the disposition of the property. Smith & Halloran, the purchasers in this case, made the granting of these privileges a condition of their bid, and, on their part, in consideration of making these conditions and for the purpose of enabling the receivers, or anyone else who should be delegated, to undertake the work of obtaining them from the parties interested, agreed, as appears by their written proposals, that the new company to be organized by them would, as quickly as possible, open and operate the works and keep them located in the city of Paterson. The contract finally made contained provisions for the conveyance or assurance of these privileges or rights on behalf of the city and the companies, and contained, also, a provision (sixth) that the new company should, as promptly as may be, open and operate the plant in the city of Paterson.

The final deposit of the amount of the cash payment ($102,000) was, by the contract (article 3), to be deposited by the purchasers when the receivers had obtained, among other things, the conveyances and assurances of the privileges and rights from these outside parties. The whole sum has, as appears by the answers and affidavits, been deposited as required by the contract, and, as I understand the contract and the affidavits of the purchasers and the receivers, the only thing remaining to be executed under the contract, before the conveyance is made to the new company, is the payment of $250,000 in cash, as its

working capital, which is, by the contract, to be actually paid in before the transfer of title to the new company. This capital is subscribed, and the purchasers say they are able to complete the contract, and the receivers say the purchasers will be able to complete it. Whether the power company, on its part, would have been willing originally and before the Smith & Halloran contract to continue the operation of the plant in Paterson, is open to some question, in view of the affidavit of Mr. Pennington, counsel for the receivers, that, in his conversation with a representative of the power company, after the execution of the Smith & Halloran contract, he (Mr. Pennington) stated to him that it would be impossible to obtain the privileges from the city of Paterson for the power company, inasmuch as the representative of this company had stated that, in case that company became the purchaser, it would not undertake to run the works permanently in Paterson, or, at least, that part of Paterson.

The case shows, I think, that the stockholders in this case, by reason of these special privileges from outside parties, secured by or with the assistance of the receivers, on the faith of the special assurances of Smith & Halloran, by their letter and contract, have obtained, by the negotiation of this special and complicated contract, an advantage which the stockholders could not otherwise have secured, and have obtained a price which, as appears by the affidavits, is about fifty thousand dollars less than the price fixed by Rogers himself for a sale, before it went into the hands of the receivers, and is more than three times as large as the proposition or suggestion previously submitted verbally to the receivers by the power company, which proposition was not, apparently, based on the continuance of the operation of the plant. In view of these special circumstances relating to the negotiation and completion of the contract, the purchasers had an additional claim to the benefit of their contract, and neither they nor the receivers should be deprived of it by the mere increase of the bid made by the power company at the time of the presentment of the contract for confirmation. Upon the case as now presented, and treating it in the most favorable light for petitioner, viz., as if the sole question were whether the contract should be approved, notwithstanding the offer made in open

court by the power company, I conclude that the contract was one which should have been approved, and that, from that point of view, the application to set aside the order confirming the sale should be denied.

But the petitioner and the purchasers do not now stand in the same position as at the time of the order confirming the sale. Neither the petitioner nor any other stockholder has appealed from the order. In the meantime the purchasers have taken possession of the plant, pursuant to the express provision of the contract, and have commenced its operation by the new company, on a scale so extensive that the sale could not be set aside without an apparently enormous loss and injury to them and to the new company, to say nothing of the interference with the rights which may have since been secured by the new company from the city of Paterson and the transportation companies on the faith of the confirmation of the contract of sale and in order to carry out its provisions. The change in the situation of the purchasers and of the receivers since the confirmation, and the delay of the petitioner in making his application to set aside the order, are sufficient reasons for refusing to disturb the order.

It is principally because of the purchasers' rights under the contract and its confirmation, and because they are not in any way connected with any of the circumstances relied on in the petition as a reason for reopening the sale that I decline to disturb it, but it is only just and proper to, add that, in my judgment, the case shows that the receivers are not chargeable with any improper or inequitable dealing toward the power company in reference to the presentation of its bid, after the execution of the Smith & Halloran contract. Under the entire facts and circumstances of the case, as now disclosed, they were, in my opinion, justified at the time of making the contract, in believing that the power company did not intend to make a bid to them for the property and the charge that the subsequent increased bid of the power company was induced by them, on the assurance that it would be accepted if made, is not substantiated. As to the claim that the position of Mr. Rogers, the principal stockholder, was not fairly represented to the court by his counsel, who was also counsel for the receivers, this, even

if true, is manifestly a matter which could not affect the purchasers and which could not in any event, and if Rogers himself now complained of it, operate farther than to induce the court now to consider whether his objection to the sale at the time would have been sufficient reason to refuse to affirm the contract. As I consider on the whole case that the contract was one which should have been approved and as it now appears (1) that the contract was made after consultation with Mr. Rogers, and with his express approval; ' (2) that he has not appealed from the order nor applied to set it aside, and (3) that' he has encouraged the purchasers in the carrying out of the contract since its execution, and has accepted a lease from the new company for a portion of the property to be conveyed to it under the contract, and (4) that he does not on his own behalf make any complaint of the action of his counsel, his present objection to the sale, presented by way of affidavit to the petition of Longbottom, cannot be considered as presenting any basis for action of the court to revoke the order.

The application to set aside the order confirming the sale must therefore be denied, and the contract, as confirmed, must stand, to be enforced both by the receivers and the purchasers.