STOKES et al. v. WILLIAMS et al.

(Circuit Court of Appeals, Third Circuit. August 10, 1915.)

No. 1948.

1. APPEAL AND ERROR ⚙═80—DECISIONS REVIEWABLE—"FINAL DECREE"— ORDER OF SALE.

A decree authorizing the receivers of a corporation to accept an offer by its creditors to purchase at private sale all the assets and rights of the corporation, and ordering a sale under the terms of the offer, objections to which were heard and adjudged before entry, and confirmation of which was unnecessary, and not contemplated, is a "final decree" and appealable without awaiting further orders respecting the distribution of the proceeds or the discharge of the receivers.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 429, 432, 433, 450, 456, 457, 494–509; Dec. Dig. ⚙═80.

For other definitions, see Words and Phrases, First and Second Series, Final decree or judgment.

Finality of judgments and decrees for purposes of review, see notes to Brush Electric Co. v. Electric Imp. Co. of San Jose, 2 C. C. A. 379; Central Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.]

2. CORPORATIONS ⚙═560—INSOLVENCY AND RECEIVERS—SALE—AUTHORITY OF COURT—BOND.

Where the District Court authorized the receivers of a corporation to accept an offer by its creditors to purchase at private sale all its assets and rights and ordered a sale under the terms of the offer, which em-

bodied a cash consideration and a release of obligations, together amounting to $411,000, unless certain minority stockholders, who objected to the sale on the ground that it would prevent recovery on certain choses in action for mismanagement by the directors and for violations of Anti-Trust Law July 2, 1890, c. 647, 26 Stat. 209, should give a bond of $400,000 to make up the deficiency, if the amounts realized from such choses in action and the proceeds of a subsequent sale should not amount to the sum bid, such requirement was not an abuse of discretion, since the amount of the bond was no more than sufficient to afford the necessary protection to the estate; the financial inability of the parties to furnish the bond not being evidence that it is oppressive or prohibitive.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. ☞560.]

3. CORPORATIONS ☞560 — INSOLVENCY—SALE OF PROPERTY — AUTHORITY OF COURT—REFERENCE.

The District Court need not refer to a special master the issue of the acceptance or rejection of an offer by the creditors of a corporation, made to its receivers, to purchase all its assets and rights for a certain sum, since the character of the office of master is advisory merely; the duty of adjudging the case being upon the judge alone, in the exercise of a nondelegable function.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. ☞560.]

4. CORPORATIONS ☞560—NOTICE—SALE OF CORPORATE ASSETS.

It is not error for the District Court to decree a private sale of a corporation's assets and rights, upon terms proposed to its receivers by the creditors of the corporation, without requiring public notice thereof by advertisement or otherwise, notice of the offer with opportunity to object having been given each creditor and stockholder, in view of P. L. N. J. 1896, p. 298, empowering receivers to transfer the assets, rights, and interests of the corporations for which they act, and in view of the power of the state courts to determine and control the terms of such sales and to sell either at public or private sale.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. ☞560.]

5. CORPORATIONS ☞560—AUTHORITY OF COURT—DISCRETION.

An order directing the receivers of a corporation to sell at private sale all its assets and rights, made over the objection of minority stockholders that the sale would prevent recovery on the liability of its directors for mismanagement and for violation of the anti-trust law, was not an abuse of discretion, where the evidence supporting such liabilities was meager and it was doubtful whether the right of action would be lost by reason of the sale; the matter being within the discretion of the trial and not the appellate court, which on appeal can only consider whether the trial court has abused its discretion.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. ☞560.]

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Howard H. Williams and Albert C. Wall, receivers of the Standard Plunger Elevator Company, and others, obtained a decree authorizing them to sell at private sale all the assets and rights of the corporation, and W. E. D. Stokes and others appeal. Affirmed.

This is an appeal from a decree of the District Court of the United States for the District of New Jersey, authorizing the receivers of the Standard Plunger Elevator Company to accept an offer to purchase, at private sale, all

the assets and rights of that corporation, including its choses in action, and ordering the sale of the same in pursuance with the terms of the offer. The appeal was taken by certain minority stockholders to protect rights which they conceived had been prejudiced by the decree and the sale made thereunder.

An irrepressible conflict between certain stockholders and officials had been waged for many years within the corporation and in the courts, culminating in the appointment of receivers.

On July 16, 1914, the receivers presented to the court a petition, showing that they had received from a committee representing creditors of the corporation an offer to purchase all of its property, excepting accounts and bills receivable and cash on hand, and praying authority to accept the same. The amount of the bid was $250,000, and included the cancellation of damages to be assessed on two interlocutory decrees entered against the corporation in certain cases, which aggregated approximately $161,000. The purchase price of the offer, when thus estimated, was about $411,000. Bills receivable, certain percentages retained on contracts, and cash on hand, aggregated about $144,000. These various sums, if in the hands of the receivers for distribution, made an approximate total of $550,000. The claims allowed amounted to about $411,000. The offer, however, provided that any excess of the purchase price, after paying all creditors and costs of administration, should be returned to the purchasers. The amount bid, therefore, was equal to the debts of the corporation and was sufficient to satisfy all creditors, but left nothing for distribution to stockholders. The tangible property of the corporation was appraised at $286,000, and its patents at $100,000.

Upon the presentation of the receivers' petition, an order was made, directing the creditors and stockholders to show cause, on July 27, 1914, why the bid of the creditors' committee should not be accepted and the sale ordered. A copy of the order and a summary of the offer were mailed to each creditor and stockholder of record. Upon the return of the order, Mr. Craig, counsel for the minority stockholders and the appellants in this appeal, asked for a continuance until July 29th, in order to present to the court, in the form of affidavits, certain information which he contended would induce the court to reject the bid. The continuance was allowed, but with the object of losing nothing thereby, the bid was accepted provisionally; that is, by a nisi order, the court authorized the acceptance of the bid, unless, on or before July 30th, a better bid was received, or a creditor or stockholder should at that time show to the court that it would be inadvisable and not for the best interest of the trust to accept the offer and sell in the manner prayed by the receivers. On July 30th Mr. Craig presented to the court several affidavits in opposition to the petition of the receivers.

The objection of the appellants to the acceptance of the offer and the order of sale, as then presented and repeated in this appeal, arose out of a grievance against certain stockholders and directors of the corporation, principally Woodin and Hoyt, who were charged, first, with fraudulent conduct, whereby the value of the corporation's stock was destroyed, and second, with effecting a combination with the Otis Elevator Company in violation of the Anti-Trust Law, and was addressed to the point that the bid, which included the sale of the corporation's choses in action to those who were interested in not suing upon them, precluded the institution of actions to recover damages for such fraudulent and unlawful conduct.

"On the assumption that the terms of the offer might have this result," the District Judge said, "I submitted the copies of the affidavits to Mr. Wall, one of the receivers, with directions to examine the same and to report to the court on August 3d as to his conclusions, to which time the whole matter was continued. I have also examined all of the affidavits with the exception of a short affidavit by Mr. Stokes, a short affidavit by Mr. Clegg, and a copy of an affidavit by Mr. Craig. The contents of these latter affidavits were stated to me by Mr. Craig.

"The receivers recommend and urge the acceptance of the offer. It appears that the acceptance of the offer will pay all of the creditors in full. The bid specifically provides, that if the amounts deposited by the bidders shall be more than sufficient to pay in full all claims proven and allowed, that the surplus

remaining shall be returned to the Creditors' Committee. The stock issued and outstanding is as follows: First preferred $311,000; second preferred $321,000; common $1,200,000. Mr. Craig's clients hold no first preferred stock: they hold, as he states, about one-quarter of the second preferred stock and a minority interest in the common stock.

"There is another claim now in judgment against the company and Mr. Woodin and Mr. Hoyt, jointly, in favor of Mr. Jones for $54,000. There is also a claim of Mr. Stokes for $15,000, which is in dispute. If the former is a claim against the company, and the latter is allowed for the full amount, there will be sufficient on hand, if the bid is accepted, to pay them. If the former claim has not already been proven before the receivers, the time within which claims can be proved will be extended to permit it to be filed and proven, if counsel wishes to do so. As represented to me, however, it seems to be a claim primarily against Mr. Hoyt and Mr. Woodin.

"The affidavits presented by Mr. Craig do not, in my judgment, present a situation which would warrant me in refusing to authorize the receivers to accept the bid, which appears to be an excellent one, with the possible exception that it may preclude the receivers from recovering anything from certain of the directors and the Otis Elevator Company on the claims above mentioned. I am by no means sure that it does preclude them from doing so; but, even assuming that it does, the evidence, to warrant the belief that any such suit could be prosecuted with effect, is so very meager that I do not feel justified in directing the receivers to reject the bid. The affidavits show a series of transactions which, although indicating that there has been an understanding between the defendant company and the Otis Elevator Company extending over a period of years to control prices, they fail to indicate that thereby the defendant company received less for its products than it would have received had it bid without such understanding. The evidence is that on several occasions, after each had put in bids, when another competitor entered the field, that they both reduced their bids. This may be very harmful to others, but I cannot see that it shows anything of which the stockholders can complain. If the directors saw fit, by a combination with the Otis Elevator Company, to secure greater sums than could have been secured had they not entered into such agreements, it surely is not a matter of complaint on the part of the stockholders of the defendant company. One instance where the company withdrew a bid, evidently at the direction of the Otis Elevator Company, is pointed to. This happened in 1906 when, admittedly, the two companies were negotiating for consolidation, or rather for the sale of the defendant company to the Otis Company. This latter project was subsequently abandoned when it was found that it would violate the provisions of the Anti-Trust Law.

"From these facts I am asked to draw the conclusion that the dealings between the two companies was a scheme on the part of the Otis Elevator Company, and Woodin and Hoyt as directors of the defendant company, to turn over the defendant company to the Otis Elevator Company by means of wrecking the former company, thus accomplishing, in an indirect way, what they attempted to accomplish by means of a direct transfer and agreement. If this were so, it has taken Woodin and Hoyt eight years to accomplish this result. I cannot conceive that if such had been their intention from the beginning, that it would have taken that length of time. However that may be, the evidence is, at the most, merely suspicion, and I do not think that is sufficient to warrant me in rejecting a bid which the receivers, who are familiar with the whole situation, urgently recommend that I accept. I appreciate the position in which Mr. Craig and his clients are placed—that the burden is artificially cast on them of proving that a cause of action exists, whereas it is incumbent upon the receivers to investigate and find out whether a cause of action does exist. But nearly four months ago, when Mr. Wall was appointed receiver, the same facts were set forth by Mr. Craig, and he was instructed to place them before Mr. Wall. There may have been good reasons why he has not done so, but this, I do not think, would be a sufficient ground for refusing to accept a bid of this kind, at this time, when it would probably be difficult to secure another bid of equal amount, especially when I am not

entirely clear that this cause of action, if one exists, could not be hereafter prosecuted by the receivers.

"I will therefore confirm the bid, unless Mr. Craig is willing to give the receivers a bond, with surety to be approved by them, in the sum of $400,000, conditioned that if the proceeds of another sale, when added to the amount realized from any litigation to be instituted against Messrs. Woodin and Hoyt, and the Otis Elevator Company, and such others as may be proper parties to such a suit, do not exceed the total amount of the present bid, plus interest on the present bid and plus the costs of all further proceedings, the obligors will pay any deficiency."

For the reasons given by the District Judge, a decree, bearing date August 4, 1914, was entered, authorizing the acceptance of the bid and ordering the sale.

Charles L. Craig, of New York City, for appellants.

Richard Boardman and Albert C. Wall, both of Jersey City, N. J., and Howard H. Williams, of New York City, for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge (after stating the facts as above). [1] This appeal was met by a motion to dismiss. The motion was made upon the contention that the decree appealed from was not final, in that the amount of dividends to inure to purchasing creditors from the sale made thereunder, as well as controversies certain to arise, remained to be determined by other and subsequent decrees, and that until so determined, no appeal can properly lie to this court. The contention was based upon the idea that the finality required by law upon which to predicate an appeal from an order or an act of a court, is the final or last one of a number of actual or possible decrees entered or to be entered in the course of a proceeding, rather than that finality which completely ends and entirely disposes of the matter to which it relates, and which leaves the aggrieved party no adequate remedy except recourse to an appeal. Odell v. Batterman Co., 223 Fed. 292, 295, —— C. C. A. ——. It is unnecessary to discuss this contention. Viewing the character of the decree from which this appeal was taken, it is sufficient to say, that the decree was a decree of sale, that objections to its terms were made, heard and adjudged before it was entered, and that confirmation of the sale made thereunder or other subsequent action by the court in respect thereto, was neither contemplated nor required. Upon sale under the decree, title to the property vested in the purchasers, and the proceedings thereafter related only to the disposition of the proceeds. The final act of the court with respect to the sale of the corporation's property was embodied in the decree of sale. For relief against the sale, therefore, resort can alone be had to an appeal from that decree, and may be had without awaiting the further orders of the court respecting the distribution of proceeds or the discharge of receivers. Blossom v. Railroad Co., 1 Wall. 655, 17 L. Ed. 673; Butterfield v. Usher, 91 U. S. 246, 23 L. Ed. 318; Sage v. Railroad Co., 96 U. S. 712, 714, 24 L. Ed. 641; National Bank v. Shedd, 121 U. S. 74, 7 Sup. Ct. 807, 30 L. Ed. 877; Maxwell v. McDaniels, 184 Fed. 311, 314, 106 C. C. A. 453. The motion to dismiss the appeal is denied.

[2] Of the errors charged to the District Court in authorizing the acceptance of the offer of the creditors' committee and ordering a sale of the corporation's property, the first is, that the District Court erred in requiring the objecting stockholders to protect the estate against loss arising from the rejection of the offer, by furnishing a bond in an amount which they deemed oppressive and prohibitive.

When considered with respect to the purpose for which the bond was required and not with regard to the financial ability of the appellants to furnish a bond for a large amount, we are of opinion that the amount demanded was not disproportionate to the protection it was intended to afford. The offer which the appellants sought to have rejected embodied a cash consideration and the release of obligations, amounting to $411,000. The bond which the court required of the appellants for the protection of the estate upon the rejection of that offer, was for the amount of $400,000. The offer was sufficient to discharge all debts of the corporation. The appellants urged its rejection without offering anything in its place other than a contention that a right of action existed against certain directors, which if successfully prosecuted, would yield more than enough to meet the demands of creditors. The District Court was therefore confronted with two propositions, one of which was certain and the other of which was uncertain. It was called upon to adopt one and reject the other. In order not to deprive the estate of the advantage of a certainty, by which the corporation's entire liabilities would be discharged, the court wisely required those who sought the adoption of an uncertain procedure to support their faith in it by giving a bond to preserve to the estate the advantages that would be surrendered by the rejection of the offer. The amount of the bond was a matter within the discretion of the court, and as it was fixed at a sum no more than sufficient to afford the protection required, it is evident that there was no abuse of the court's discretion upon which to base an appeal. The financial inability of a party to respond to a proper order of a court demanding a bond in a large amount, is not evidence that the amount demanded is, in a legal sense, either oppressive or prohibitive.

[3] Error is imputed to the District Court for failing to refer the issue of the acceptance or rejection of the offer to a special master with instructions to take testimony and report thereon.

It is neither disclosed by the record nor represented by counsel, that at any time during the pendency of the matter culminating in the order of sale, a motion was made or the idea suggested that the controversy be referred to a master. It is now contended by the appellants that the duty to make such a reference devolved upon the court, if not upon motion of a party, then of its own motion.

We know of no practice or rule of law applicable to this case which raised in the court the duty to refer the matter to a master for any purpose. A reference to a master for decision cannot be made without the consent of parties, and a reference to a master merely to obtain his assistance is never made unless his assistance is desired. When so desired, the information he may communicate by his find-

ings, upon the evidence presented to him, is merely advisory to the court, which it may accept and act upon or disregard in whole or in part, according to its own judgment of the weight of the evidence. Mastin v. Noble, 157 Fed. 506, 508, 85 C. C. A. 98; Kimberly v. Arms, 129 U. S. 512, 523, 9 Sup. Ct. 355, 32 L. Ed. 764; Basey v. Gallagher, 20 Wall. 670, 680, 22 L. Ed. 452; Quinby v. Conlan, 104 U. S. 420, 424, 26 L. Ed. 800. When the advisory character of the office of a master is considered, it is apparent that the trial judge committed no error when, without the aid of a master, he adjudged the case in the performance of a duty which devolved upon him alone, and in the exercise of a function which he could not abdicate, or delegate to another.

Upon the specification that the court erred in not referring the matter to a master, the appellants state at length in their brief what testimony might have been produced before a master, the substance of which was presented to the court by affidavits, but the appellants fail to cite authority for their contention that it was the duty of the court to make such a reference and that failure to perform that duty constituted error.

[4] Error is assigned to the District Court for decreeing a private sale of the corporation's property upon the terms proposed by the offer, without requiring public notice thereof by advertisement or otherwise. This specification of error suggests two questions, neither of which was presented to or considered by the court below, and but one of which is raised on appeal. The first is the power of the court to authorize receivers to accept an offer to purchase property at private sale, and the second is the legality of an order to sell property pursuant to the acceptance of such an offer. The two questions are inevitably linked together, for without the power to accept such an offer, a sale based upon an acceptance thereof must be illegal, while on the other hand if the court had the power to accept the offer, it would be difficult to hold that an order to sell in pursuance therewith is not legal.

By the statute of the state of New Jersey (P. L. 1896, p. 298) prescribing the appointment, powers and duties of receivers, under authority of and in conformity with which the District Court acted, receivers are empowered to sell, convey and assign the estates, rights and interests of the corporations for which they act. Being officers of the court and being so empowered, courts of equity of the State of New Jersey order and direct receivers to sell and dispose of the property of corporations over which they have jurisdiction. Having power to order the sale of a corporation's property, the courts find, by necessary implication, that they likewise have power to determine and control the terms of such sales, and authorize their receivers to accept such offers as in the discretion of the courts are deemed advantageous to the administration of the affairs of the corporation. When the terms proposed contemplate a private sale, the courts are confronted by nothing in the statutes, so far as we are informed, which prescribes the character of such sales or the manner in which notice thereof shall be given. The courts of the State of New Jersey, therefore authorize receivers to sell either at public or private sales (Rogers v. R. L. Co., 62 N. J. Eq.

111, 50 Atl. 10; Leary's Case, 5 Dick. [50 N. J. Eq.] 383, 25 Atl. 197), and in conformity with the practice of the State courts, the District Court of the United States for the District of New Jersey, authorizes the acceptance of offers, and in default of better bids, decrees private sales of corporate property, without notice by advertisement. Shelling v. Mercantile Co-Operative Bank (1903) no opinion filed; Loeb v. Oriental Metal Bed Co. (1913) no opinion filed; Keller v. Liberty Hat Mfg. Co. (1914) no opinion filed; Dickerman v. National Machine Co. (1911).

Notice of the offer of purchase and the terms of the offer having been given each creditor and stockholder of the corporation, and opportunity having been afforded them to object to its acceptance or make a better offer, we are of opinion that no inequity was committed in ordering the sale without public advertisement, and are not inclined to find error in a practice adopted and pursued by both the state and federal courts in New Jersey.

[5] The remaining assignments of error are addressed in general to the action of the court in authorizing the acceptance of the offer of the creditors' committee and decreeing a sale upon its terms. Upon application by the receivers to that end, there was uncovered the trouble which had been brewing within the corporation for years. It was made acute by one of the terms of the offer, which provided for the sale and assignment of the corporation's choses in action, which, it was contended by the objecting stockholders, included the corporation's right of action against certain of its directors and the Otis Elevator Company for fraud and for a violation of the Anti-Trust Law, and it was further contended, as the purchasers were, or substantially represented, the very persons against whom such right of action existed, all hope of recovery would be lost if that right of action passed to them.

On appeal, the case at first appeared to be argued upon the theory that the appellant stockholders were afforded no opportunity to make objections to the sale, or to note exceptions to its confirmation, and therefore they were prejudiced in their rights without being heard. This court inquired and requested to be informed of the practice of the courts of New Jersey with respect to judicial sales and confirmation thereof. It developed that there was a practice with respect to sales by receivers, followed by the District Court in this case, where the terms are stated and approved before the orders therefor are made, and where, therefore, subsequent confirmation is neither required nor necessary. Under that practice, the right to object to a sale is preserved, and whether that right is required to be exercised before or after the sale is unimportant in principle. The important thing is, the right exists, and in this instance it was resorted to and exercised.

The receivers had an offer to purchase the property of the corporation. They applied to the court for authority to accept the offer and to sell upon its terms. Notice thereof was given the appellants. They objected. Authority to accept the offer and to sell was made nisi, that is, unless the appellants, by a future day, should show cause

why the sale should not be made upon the terms offered, or secure a better bid. They produced no better offer, but submitted to the court and addressed to its discretion the matters and allegations upon which they based their objections. These were heard, considered and rejected and the order of sale was subsequently made absolute. In this, error is charged to the court. In what is error charged? Admittedly in the decision or judgment of the court that the matters offered as objections were not sufficient to justify the court to reject the offer and refuse the order of sale. But the acceptance or rejection of the offer, and the making or withholding an order of sale, were matters wholly within the discretion of the court. Being matters within the discretion of the court, the question on appeal is not whether this court would have made the same order, but whether the District Court, in making the order, abused its discretion. In treating this question, we conceive we are controlled by the same principle that applies in a case where an appellate court is asked to review and reverse the judgment of a trial court in granting or refusing a temporary injunction. In both instances, the right to exercise a sound judicial discretion is vested in the trial court, and not in the appellate court. It is to the discretion of the trial court and not to the appellate court, that the law has intrusted the power in one instance to order a sale as in the other to grant or dissolve an injunction, and the only question for an appellate court is, Does the proof clearly establish an abuse of that discretion by the trial court (American G. S. Co. v. Twin City S. Co., 202 Fed. 202, 206, 120 C. C. A. 644; Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 939, 52 C. C. A. 559), for unless such an abuse is clearly established, or an obvious error has occurred in the application of the law, or a serious and important mistake has been made in the consideration of the proof, the judgment of the trial court must be taken as presumptively correct. Mastin v. Noble, 157 Fed. 506, 508, 85 C. C. A. 98.

Applying these well settled principles to the case under consideration, we are unable to find that the trial judge abused the discretion reposed in him, or committed error of fact or law in exercising his discretion. The case therefore must rest upon his judgment.

The decree below is affirmed.