SCATTERGOOD et al. v. AMERICAN PIPE & CONSTRUCTION CO.

(District Court, E. D. Pennsylvania. December 18, 1917.)

No. 1731.

1. CORPORATIONS ⬩553(1) — RECEIVERS — APPOINTMENT — JURISDICTION OF COURT.

In view of the increasing liberality in chancery practice, both in the federal and state courts, and of the long-continued precedents, a court of equity has jurisdiction to appoint a receiver for a private corporation performing functions of a public character, to act as caretaker of its property, and to prevent creditors' collection of their demands during a specified period of time for the purpose of enabling the corporation to gather its resources and to continue operations; the appointment of the receiver having the same effect as the legislative declaration of a moratorium.

2. CORPORATIONS ⬩638—STATUTES—EXTRATERRITORIAL FORCE.

The laws of the state under which a corporation doing business in another state was chartered have no extraterritorial force.

3. CORPORATIONS ⬩684—RECEIVERS—APPOINTMENT—AUTHORITY.

Where a New Jersey corporation doing business in Pennsylvania got into difficulties, a receiver may be appointed by the federal District Court for Pennsylvania to care for its property and take over its assets, regardless of the fact that the corporation might be subject to dissolution under the New Jersey laws, for such laws have no extraterritorial effect and could not even under the principles of comity be given effect by the federal District Court sitting for Pennsylvania; this being particularly true as the purpose of the receivership was to prevent creditors from immediately collecting their demands and to enable the corporation to continue operations, while a dissolution would, of course, end them.

4. EQUITY ⬩363—MOTION TO DISMISS—EFFECT—"DEMURRER."

A motion to dismiss a decree appointing a receiver, rendered on the bill praying the appointment, is essentially a "demurrer," and the court cannot go beyond the facts pleaded.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demurrer.]

---

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Bill by Alfred G. Scattergood and others against the American Pipe & Construction Company, for the appointment of a receiver. On motion to vacate decree. Motion denied.

Runyon & Autenrieth, of Jersey City, N. J., and Horace L. Cheyney, of New York City, for the motion.

F. B. Bracken and Morgan, Lewis & Bockius, all of Philadelphia, Pa., and Collins & Corbin, of Jersey City, N. J., opposed.

DICKINSON, District Judge. The considerations which lead to the disposition to be made of this motion are of the very broadest and most general character. Every legal controversy of sufficient importance to be taken seriously presents two phases. It has its practical side, involving very practical consequences, and its legal side, involving the formulation of legal principles and their application, and these may be approached through forms of procedure, and raise questions of the appropriateness of the special remedy invoked. These purely professional or legal considerations are also of importance because they directly affect or indirectly influence the development of the science of the law and enter into the building up of our system of laws. In this molding process, the legal profession, as well as the courts, cannot avoid having a part and are expected to have a part. The profession can make its influence felt only through the courts, and the courts must stop short of any invasion of the proper domain of the Legislature. Even when the power of the Legislature is not in question, wisdom would dictate that there should be no purely arbitrary interference on its part with the natural growth and development of the remedial side of the law along proper and approved lines. This freedom to grow and develop is one of the many claims to merit which the so-called common-law system possesses. To it we are indebted for many of our most effective and efficient legal and equitable remedies. The possession of this judicial power has led, it is true, to the courts being subjected to general criticism for being overconservative, and in notable specific instances to the charge of usurpation of power. On the whole, however, it has worked to the common good, and as the Legislature has amply adequate defensive power at its command there is little practical danger of permanent harm from judicial action.

[1] All this seems very academic, but these considerations are really intensely practical, and the practice of the courts in appointing receivers for corporations, which has grown almost literally by leaps and bounds, affords a good illustration of the thought intended to be expressed. If bills under which such receivers have been appointed were listed and analyzed, the growth and development of this branch of remedial law would be disclosed. It would doubtless be found that of all of them, from the beginning, at least 80 per cent., resulted in the making of a decree which has nothing more or less than the declaring of a moratorium against creditors, and of the proceedings in late years, 95 per cent. of the bills had this more or less veiled end in view. It is difficult for a solicitor devoted to old established principles of chancery practice to understand how the courts can protect a corporation, which is in financial straits, against suits by its creditors, when

it would not protect an individual under like circumstances, and yet so widespread and general a recognition and acceptance of the assertion of the power has been accorded its assertion, that in at least two notable instances in Pennsylvania it was even attempted to be extended, and, until halted by the Supreme Court, actually was extended to individual debtors. We do not need to search far for the reasons for this acquiescence. The end reached was a good end, and the remedy applied justified itself in practical results. The lawyer, who advised his clients who were interested in such a corporation that no such remedy could be had through a bill in equity, would have found himself supplanted by other counsel who promptly had the needed remedy applied through just such a bill. Such an analysis would disclose two other things. One is that in the early cases the solicitor, who filed the bill, resorted to the subterfuge of formally averring something of no real importance, for the sole purpose of presenting technical grounds of equitable jurisdiction; in the later cases, such subterfuges are abandoned. The other is that the early cases disclose a reluctance on the part of the courts to appoint receivers, and a refusal in many instances to appoint them; the later cases disclose appointments made evidently almost as a matter of course. It will further be observed that this change came about by gradual approaches. It doubtless had its beginning in the resort to receiverships by corporations having public functions to perform, but the practical need to conserve the assets of other corporations was so real and so urgent that the courts yielded to it to the extent of naming a temporary receiver with leave to move to vacate, and a recognition of this same practical need prevented any such motion being made. Indeed, the history of this very case discloses precisely that condition—not a single creditor has appeared to avail himself of this right, leave to assert which was invited by the decree. It may be further said that even the broad distinction between different forms of action, and the necessity to assert a given cause of action by means of its appropriate form of action, is breaking down under the assaults, legislative and otherwise, which are being made upon it. In Pennsylvania, for instance, under the provisions of the act of 1907, resort may be had to a bill in equity to redress almost any wrong, of which the complainant may complain, leaving to respondent the right to raise the question of equitable jurisdiction by a prompt application to have the case referred to the law side of the court.

Our present equity rules show a like attitude in the permission given by Rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv) for such transfers. To those of us who have been schooled in the older and more strictly logical system of practice, these new doctrines may seem almost heretical; but, however reluctant an acquiescence in them, we cannot refuse recognition of the fact that they have been accepted, and further cannot deny to them the merit of bringing good results. Numberless precedents establish the facts of such acceptance from the multitude of which we cite at random one as an illustration, although perhaps not the best illustration. Stokes v. Williams, 226 Fed. 146, 141 C. C. A. 146.

Our conclusion is that these precedents establish the jurisdiction and power of the court to appoint receivers in proceedings such as the

instant one, and that the challenge of such jurisdiction cannot be deemed ground to vacate the decree. Our view being that the jurisdiction having been authoritatively found to exist, we are bound to uphold it. There is no occasion to vindicate the ruling by bringing it into accord with accepted principles of chancery practice. The duty is best left to counsel. If we sought to support it, we might choose different grounds from those selected by counsel. Established precedent is in itself a sufficient ground.

This disposes of the present motion to dismiss, so far as it is based upon absence of jurisdiction.

[2] The other basis grows out of this state of facts. The defendant is a New Jersey corporation. All its activities are, however, here displayed, and here it admittedly can be and was served with process. In addition to this, it had appeared and voluntarily submitted itself to the jurisdiction of this court, and is in no sense contesting such jurisdiction. So far as jurisdiction is of the parties as distinguished from the subject-matter, it is therefore not denied. The intervening stockholder has, however, moved to dismiss both on the ground of what may be called want of jurisdiction of the subject-matter of the bill, and on the further ground that exclusive jurisdiction of the real subject-matter of the bill is vested in the court in and for the district of New Jersey in which a bill for the appointment of a receiver is now pending. The substantial thought (although counsel doubtless prefer their own mode of expressing it) is that a condition in which the defendant corporation, as disclosed by this bill, is one of insolvency, and calls for the winding up of its affairs, its dissolution, and the distribution of its assets equitably among its creditors, such dissolution, to seize one of these elements of its condition, is to be decreed by a court having power to apply the laws of the state of its creation and is to be affected in conformity with such laws which point out the mode and manner and by decree of what tribunals it shall be done. The corporation, which is the creature, is bound by the laws of its creation, and can be dissolved only as its creator has decreed. The laws of New Jersey prescribe what shall be the effect of the insolvency of a New Jersey corporation, and provides a remedy and a mode of procedure in all such cases. As this act of Assembly, at least so far as it is a procedure act and gives a remedy, has no extraterritorial force, the proceeding to which resort must be had must be sought where it can be found. It is the same thought upon which is based the like principle of disclaiming jurisdiction to decide controversies over internal management. Abundant support for this position is found in the following rulings, among many others which might be cited: Madden v. Penn. Co., 181 Pa. 617, 37 Atl. 817, 38 L. R. A. 638; McCloskey v. Snowden, 212 Pa. 249, 61 Atl. 796, 108 Am. St. Rep. 867; Maguire v. Mortgage Co., 203 Fed. 858, 122 C. C. A. 83.

[3] If the purpose of the bill here pending were such as is predicated in this argument, the convincing power of the argument could not be denied. We do not, however, so view the bill. It has not the purpose, nor does it have in view either the dissolution of the corporation or a winding up of its affairs. Its evident and real, in the sense

of its practical, purpose is just the opposite of this. The purpose is to have the business of the corporation continue without interruption, and the aid of the court is invoked to prevent such interruption by the act of others. There is no averment of insolvency and not only an avoidance, perhaps even a studied avoidance, of the averment of insolvency, but an expression of the purpose to put or at least the expectation that when the present emergency has passed the corporation will be again upon its feet. Any conflict of jurisdiction, or even danger of it, is of course to be avoided, and we heartily second and join in every effort to avoid it; but we see no real danger of it more than there would be if a receiver had been appointed in one jurisdiction, and afterwards asked for in another. The doctrine of comity supplies us with a good working principle. This would extend in a proper case to the refusal to permit a proceeding, which was instituted for one purpose, to oust or forestall the proper jurisdiction of another tribunal by expanding its final purpose to include what really came under the second jurisdiction. As applied to a situation, such as that suggested, if the real purpose was to wind up the affairs of a corporation and distribute its assets, a court which did not have the jurisdictional power to do this would not entertain a bill for this purpose. For the same reason that it would not entertain a bill for such a purpose it would entertain a bill for the opposite purpose. A bill, whose purpose is to keep the corporation in the performance of its functions, is properly filed in the jurisdiction within which the corporate business is done. The concept, which even the professional mind has of a corporation, has been much modified from what it was at first. It is no longer an abstraction incapable of doing anything except in strict accordance with the words of its creation. More and more recognition is given to it as an existing personality, not even as yet perhaps possessing a soul, but having a mind and purpose, and even a motive of its own, so that it may be answerable for its deceit or for an assault or other trespass and be guilty of many forms of crimes, even those which have the element of intent. So it is with the distinction between foreign and domestic corporations. The practical situation has so changed that, so far as affects its relation with others, the place of its creation is of little more importance than the place of birth of a natural person who is a litigant, plaintiff or defendant. The fact may be of importance, or it may not. The distinction between domestic and foreign corporations rests upon some grounds which are substantial the existence of which is recognized when present. The corporation itself, and even its managers and stockholders, may by acceptance of the terms of its creation have subjected themselves to the jurisdiction of the courts of the place of its creation, and may have assumed duties and obligations by the breach of which the penalty of a decree of dissolution has been incurred to be declared and enforced in accordance with laws which have no extraterritorial force. The jurisdiction of the courts of that jurisdiction to decree such dissolution would not be ousted, nor would jurisdiction be conferred upon foreign courts to so decree by the mere fact that all the activities of the corporation were carried on within the to it foreign territory. The same thought

would apply to a proceeding involving as its subject-matter what may be called the internal management or organization of the corporation. Other kinds of proceedings, however, may be brought, as in fact they are daily brought, in any court which has jurisdiction of the subject-matter and of the parties, whether the proceeding be in equity or be an action at law and whether the corporation be a plaintiff or a defendant. The bringing of an action in one jurisdiction may or may not have an effect upon a proceeding instituted in another as evidential, or even to give a cause of action in the other, or it might operate so as to induce a refusal to entertain the second proceeding as uncalled for. All such questions the latter tribunal would determine. These consequences would, however, not affect the jurisdiction of the first tribunal. The proceeding in the second tribunal might materially affect the character of the decree which the first tribunal would finally enter, precisely as the fact that one proceeding had already been begun might affect the question of whether another court would entertain a second proceeding. Whatever rights, legal or equitable, are conferred upon the corporation or others by the act of its creation of course belongs to them, and (aside from mere rights to particular remedies) go with them wherever they go. This is the distinction by which we determine whether local laws have any extraterritorial force. It is asserted, in support of the present bill, that the New Jersey statute confers rights which may be asserted in such a proceeding. Whatever support is thus given to the bill it has, but we prefer not to put the ruling on this ground, and to refrain from giving any construction to the New Jersey statute. In its general character, it partakes of the nature of a statute against fraudulent conveyances by insolvent corporations, providing for their dissolution, and of a bankruptcy statute affecting the assets of corporations which have been dissolved.

[4] This is a motion to dismiss and is essentially a demurrer, and we cannot go beyond the facts pleaded. Our conclusions upon the averments of the bill are:

1. The bill is substantially for the appointment of a receiver as a caretaker of the assets of the corporation within this district, and to enable it to perform functions which are of real public character. It is itself strictly a holding company, but it in effect performs strictly public functions. Whatever criticism on general legal and equitable principles the practice of appointing receivers in the cases of private corporations may invite (and we think the critics are justified), such practice in cases of corporations of the character of this defendant has been too firmly established by a long line of precedents to be judicially condemned. This court does therefore have jurisdiction of the subject-matter and admittedly has jurisdiction of the parties.

2. The jurisdiction of this court is not affected by the fact which does not appear by this bill that by reason of the conduct of its affairs, its insolvency, or otherwise, it has subjected itself to liability to a proceeding under the New Jersey Statute for its dissolution.

In reaching those conclusions, we have had in mind the distinction between the power of a court to appoint a receiver when such appointment is merely ancillary to the exercise of undoubted jurisdiction of

the main subject-matter of the bill. The practice is to appoint re-
ceivers as caretakers, and to assure the continuance of corporate activ-
ities as a temporary expedient. If this practice is wrong, it should be
condemned. This court cannot condemn it because we feel bound by
precedents which we cannot overturn. The argument against it, as
well as its support, is each in capable hands.

The motion to dismiss is denied.